OPINION


No. 04-05-00589-CV

CITY OF SAN ANTONIO,
Appellant

v.

SUMMERGLEN PROPERTY OWNERS ASSOCIATION, INC., Kenneth Carey, Joe
Cochran, William McCrae, Karen Peña, George Baum and Dan Vana,
Appellees




From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-02005
Honorable David A. Berchelmann, Jr., Judge Presiding

PER CURIAM
 
Sitting:            Alma L. López, Chief Justice
                        Sarah B. Duncan, Justice
Phylis J. Speedlin, Justice
 
Delivered and Filed:   November 23, 2005

REVERSED AND DISMISSED
            In this interlocutory appeal we consider the issue of whether appellees, a homeowners
association and individual property owners in the Summerglen/Canyon Springs and Evans/Bulverde
Road areas, have standing to challenge the City of San Antonio’s proposed annexation of their
property. We hold the property owners do not have standing to assert any of their claims for
declaratory relief under Chapter 43 of the Local Government Code or under House Bill 585;
accordingly, we reverse the trial court’s order denying the City’s plea to the jurisdiction, vacate the
order granting a temporary injunction against the City, and dismiss the property owners’ claims.
Factual & Procedural Background
            On September 19, 2002, the City Council of San Antonio


 adopted a new three year
annexation plan pursuant to § 43.052 of the Local Government Code.


 Tex. Loc. Gov’t Code Ann.
§ 43.052 (Vernon Supp. 2004-05). The City amended the plan on December 12, 2002 to add several
new proposed annexation areas within its extraterritorial jurisdiction (“ETJ”), including the
Summerglen/Canyon Springs and Evans/Bulverde Road areas.


 Under § 43.052(g), the annexation
of those areas must be completed before the 31st day after the third anniversary of the date the areas
were added to the plan, i.e., before January 12, 2006. Tex. Loc. Gov’t Code Ann. § 43.052(g). 
If the annexation is not completed by that deadline, the City may not annex the areas for five years. 
Id.
            Following the addition of the subject areas to its three-year annexation plan, the City
provided notice of the proposed annexation to the property owners within 90 days, and posted the
amended annexation plan and proposed annexation schedule for the areas on its website, as required
by § 43.052(f) and (j), respectively. Tex. Loc. Gov’t Code Ann. § 43.052 (f), (j). The City posted
the required inventory of services on its website on August 27, 2003. See Tex. Loc. Gov’t Code
Ann. § 43.053(g) (Vernon Supp. 2004-05). The City presented a draft plan for the provision of
services to the areas at the first public hearing on October 30, 2003. A second public hearing was
held on November 13, 2003, with an additional third hearing on November 25, 2003 at the request
of Summerglen’s residents. See Tex. Loc. Gov’t Code Ann. § 43.0561(a) (Vernon Supp. 2004-05)
(requiring two public hearings within 90 days of the date the inventory was made available).
            Representatives were appointed by the Bexar County Commissioner’s Court for each of the
proposed annexation areas from February through April 2004. Thereafter, a series of negotiations
were held between the City and the area representatives regarding the terms of the service plan. See
Tex. Loc. Gov’t Code Ann. § 43.0562 (Vernon Supp. 2004-05) (requiring negotiations for the
provision of services upon annexation). On June 1, 2004, prior to the first negotiation session, the
Summerglen representatives submitted a written request for arbitration. The City, through outside
counsel, responded that the arbitration request was premature because negotiations must be
completed before arbitration is proper under § 43.0564. See Tex. Loc. Gov’t Code Ann. § 43.0564
(Vernon Supp. 2004-05) (providing that if an agreement is not reached through negotiations, either
party may request arbitration to resolve the service plan issues). From October 2004 to July 13,
2005, a total of ten negotiation sessions were held on the service plan. Ultimately, no agreement on
services was reached.
            On February 28, 2005, during the period of negotiations, the Summerglen Property Owners
Association, Inc. and several individual property owners and appointed representatives in the area
filed suit seeking a declaratory judgment that the City’s attempted annexation was unlawful based
on procedural violations of the annexation process set forth in Chapter 43 of the Local Government
Code, such as failure to give proper notice of the November 25, 2003 hearing, and failure to provide
more than a draft service plan; the suit also alleged the City’s failure to arbitrate upon request was
unlawful. On March 9, 2005, a group of individual property owners and representatives in the
Evans/Bulverde Road area intervened, requesting the same declaratory relief that the City had failed
to comply with the statutory procedure for annexation and could not proceed with the proposed
annexation. On June 23, 2005, the City filed a plea to the jurisdiction contending the individual
property owners do not have standing to sue because claims based on procedural irregularities in the
annexation process may only be brought in a quo warranto proceeding. The City further asserted
that the issue of arbitration was not ripe because the negotiation process had not yet run its course.
            On June 16, 2005, House Bill 585 was signed by the Governor and became effective
immediately. Section 2 of the bill prohibits a municipality with a population of one million or more,
that has operated for at least 10 years under a three-year annexation plan similar to the plan described
in §43.052, from annexing an area in its ETJ that is north and east of I.H. 10 and that is either
adjacent to the municipality’s boundaries or within 1 1/2 miles of a deferred annexation area. The
parties agree that H.B. 585 applies to the City of San Antonio, and specifically, prohibits annexation
of the Summerglen/Canyon Springs and Evans/Bulverde Road areas because they lie north and east
of I.H. 10 and are within 1 1/2 miles of the PGA Tour deferred annexation area.



            On June 28 and 30, 2005, the property owners filed applications for a temporary injunction
restraining the City from taking any further steps toward annexation, based on their assertions that
annexation of their areas would be a direct violation of new H.B. 585. In its response opposing the
temporary injunction, the City contended that H.B. 585 is unconstitutional as a special or local law
because it only applies to the northeast area of San Antonio. In addition, the Summerglen/Canyon
Springs plaintiffs amended their petition, and the Evans/Bulverde Road intervenors amended their
plea in intervention, to add a third claim for declaratory relief stating that annexation would violate
H.B. 585. The City’s second amended answer included a counter-claim for declaratory relief that
H.B. 585 is unconstitutional as a local or special law.
            On July 27, 2005, the trial court held an evidentiary hearing on the temporary injunction
applications and the City’s plea to the jurisdiction.


 Testimony was presented by two City
employees, the Comprehensive Planning Manager, Jesus Garza, and the City Planning Director, Emil
Moncivais. Garza testified to the City’s compliance with all of the statutory deadlines in the
annexation procedure set forth in Chapter 43, including giving 10 days notice of the November 25,
2003 public hearing, and the timely submission of a “complete” service plan at the first public
hearing on October 30, 2003. Garza testified the service plan presented at the October 30, 2003
hearing was a “complete” plan as required by the statute, even though it was in draft form because
a service plan is not “final” until adopted by the City Council at the time the annexation ordinance
is adopted. See Tex. Loc. Gov’t Code Ann. § 43.056(a) (Vernon Supp. 2004-05) (requiring the
municipality to “complete a service plan” for the area to be annexed before the first day of the 10th
month after the month in which the inventory of services is prepared).
            With respect to Summerglen’s arbitration request on June 1, 2004, Garza stated the City has
not “refused” to arbitrate. He and Moncivais testified that the City responded to the arbitration
request by letter stating that arbitration was proper only after the mandated negotiations had been
completed, and the request was premature. In addition, Garza testified to the City’s interpretation
of § 43.0564 as only requiring arbitration on the terms of the service plan, not on whether to proceed
with annexation. After the last negotiation on July 13, 2005, Garza testified the City stated its
position in a letter dated July 15, 2005, that it is “agreeable and intends to proceed with arbitration”
on the service plan, and is awaiting any additional arbitration requests from the other areas’
representatives within the 60-day period following the last negotiation. Summerglen’s counsel stated
he received notice from the City withdrawing its July 15 letter the evening before the hearing. Garza
responded that he was unaware of such a letter. He reiterated that the City is still willing to proceed
to arbitration on the service plan.
            Finally, Garza testified that the City staff intends to recommend proceeding with annexation
of the Summerglen/Canyon Springs and Evans/Bulverde Road areas as scheduled in December 2005,
unless enjoined by the court. He stated if the court enjoined the City staff from taking further steps
toward annexation, it would not be possible to conduct the vote on annexation in December 2005.
If annexation is approved in December 2005, the annexed areas will be placed on the tax rolls at
midnight on December 31, 2005, and will simultaneously become subject to City regulations,
ordinances and fees. Property taxes will be assessed for 2006, but will not be due until January
2007. Garza testified that the City’s policy regarding annexation is to continue being an
“economically viable city,” and that it uses a cost revenue model to determine whether the tax
revenues will pay for the increased services over time.
            On August 12, 2005, the trial court entered an order denying the City’s plea to the
jurisdiction, and a separate order granting a temporary injunction enjoining the City and its staff from
taking any further steps toward annexation, except for posting the agenda and voting on the proposed
annexation. The order also set a trial date of October 17, 2005.


 The City timely brought this
accelerated appeal from both orders, thereby delaying an adjudication on the merits. Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(4),(8) (Vernon Supp. 2004-05) (subsection (b) provides that
an interlocutory appeal of an order denying a plea to the jurisdiction stays all proceedings in the trial
court).
Analysis
            On appeal, the City raises five issues: (1) whether the trial court erred by denying its plea
to the jurisdiction because the property owners (a) lack standing to sue for the alleged procedural
defects in the annexation process because the only proper vehicle to challenge the annexation process
is a quo warranto proceeding by the State, and (b) lack standing to sue based on a violation of H.B.
585 because it is an unconstitutional local law; (2) whether the court erred in granting the temporary
injunction because the property owners did not show a probable right of success; (3) whether the
court erred in granting the injunction because the property owners did not show irreparable injury
prior to a vote on the proposed annexation; (4) whether the injunction violates the separation of
powers doctrine because it enjoins a legislative function; and (5) whether the injunction is
sufficiently specific under Tex. R. Civ. P. 683.
            The property owners respond that the court properly denied the plea to the jurisdiction
because their suit challenges substantive errors in the statutory annexation process, such as the City’s
failure to arbitrate once requested, and a quo warranto proceeding is required only for challenges
to procedural errors in the annexation process. In addition, they contend they have standing to
challenge the City’s authority to annex their areas based on H.B. 585’s ban on annexation of their
areas and the bill’s presumed constitutionality. Therefore, they assert they have standing to raise all
three of their claims for declaratory relief. With respect to the temporary injunction, the property
owners respond that they established a probable right of success because H.B. 585 clearly prohibits
annexation of their areas and is presumed constitutional; further, even if it is a “local law,” there is
a rational reason for the special classification of the area. They assert that they established the
likelihood of irreparable injury based on the City’s intent to proceed with annexation despite H.B.
585, and upon annexation, the immediate imposition of taxes and regulations by the City for which
damages are not recoverable from the City. In addition, the property owners assert the injunction
is sufficiently specific and limited in scope because it enjoins only non-legislative activities, and thus
does not violate the separation of powers doctrine. Based on the reasons discussed below, we
conclude the property owners lack standing to assert any of their claims for declaratory relief;
therefore, we need not address the City’s other issues raised on appeal.
Plea to the Jurisdiction
            In their live pleadings, the plaintiffs and intervenors raise three claims for declaratory relief: 
(1) the City’s actions in attempting to annex their property violated their statutory rights
under Chapter 43 of the Local Government Code and are unlawful;
 
(2) the City’s unilateral determination of when the arbitration provisions of Chapter 43
become applicable is unlawful; and 
 
(3) the City’s attempt to annex their property is in violation of H.B. 585.

            They request relief in the form of a judgment declaring the proposed annexation unlawful,
or alternatively, an order that the City’s refusal to arbitrate is unlawful, plus any other relief to which
they are entitled under Chapter 43. The trial court’s order denying the City’s plea to the jurisdiction
finds that the property owners have “standing to assert claims for violations of the substantive
provisions of Chapter 43 of the Local Government Code and the provisions of H.B. 585.” The order
does not specify which claims under Chapter 43 the court considered to be substantive.
            The City argues on appeal that the trial court erred in denying its plea to the jurisdiction on
the property owners’ first claim because it is based on procedural irregularities in the statutory
annexation process, and a claim based on procedural defects may only be brought by the State in a
quo warranto proceeding pursuant to Chapter 66 of the Civil Practice and Remedies Code. See Tex.
Civ. Prac. & Rem. Code Ann. §§ 66.001-.003 (Vernon 1997). As to the property owners’ second
claim based on their request for arbitration, the City argues they have standing only to enforce
arbitration, not to prohibit or void the annexation. Finally, the City argues the property owners do
not have standing to bring their third claim because H.B. 585 is unconstitutional, and thus, void;
therefore, it does not prohibit the proposed annexation. The property owners, in turn, argue they
have standing to sue because their first two claims are based on substantive defects in the annexation
process which void the City’s annexation authority, and their third claim is based on H.B. 585’s
specific removal of the City’s authority to annex their property and the bill’s presumed
constitutionality.
            Standard of Review. This court reviews a trial court’s ruling on a plea to the jurisdiction
under a de novo standard of review. Tex. Natural Res. Conserv. Comm’n v. IT-Davy, 74 S.W.3d
849, 855 (Tex. 2002). In conducting our review, we take the factual allegations in the property
owners’ petitions as true and construe them in their favor. Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993); City of San Antonio v. Hardee, 70 S.W.3d 207, 210 (Tex. App.
—San Antonio 2001, no pet.). To the extent the City challenges the validity of the property owners’
factual allegations, it must plead and prove they were fraudulently made to confer jurisdiction. 
Hardee, 70 S.W.3d at 210. In addition to the pleadings, we may also consider relevant evidence and
must do so when necessary to resolve the jurisdictional issues raised. Bland Indep. Sch. Dist. v.
Blue, 34 S.W.3d 547, 554 (Tex. 2000). As in Hardee, the only issue on the plea to the jurisdiction
in this case involves the individual property owners’ standing to bring their claims, and this court
may not consider the merits of the underlying suit. Hardee, 70 S.W.3d at 210.
            Applicable Law. The determination of whether an individual landowner has standing to
challenge annexation turns on whether the challenge attacks the city’s authority to annex the area 
or merely complains of a violation of statutory procedure. Id. Procedural irregularities in the
exercise of the city’s annexation power may render the annexation voidable, but do not render the
annexation void. Id. at 211.
            It is well established that a quo warranto suit by the State on behalf of its citizens is the only
proper method to challenge procedural irregularities such as lack of notice, adequacy of the service
plan, lack of a quorum for hearing, and other defects in the process of adopting an annexation
ordinance. Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 658 (Tex. 1995);
Alexander Oil Co. v. City of Seguin, 825 S.W.2d 434, 436 (Tex. 1991) (holding that quo warranto
proceeding is only proper method to attack validity of city’s annexation, unless annexation is
“wholly void”). Through a quo warranto proceeding, the State “acts to protect itself and the good
of the public generally, through the duly chosen agents of the State who have full control of the
proceeding.” Alexander, 825 S.W.2d at 437 (quoting Fuller Springs v. State ex rel. City of Lufkin,
513 S.W.2d 17, 19 (Tex. 1974)). A quo warranto proceeding settles the validity of the annexation
on behalf of all property owners in the subject area, and avoids the problems of successive individual
suits which are only binding on the parties and may yield conflicting results. Id.
            On the other hand, private party challenges to annexation have historically been permitted
when the challenge is based on the municipality exceeding the annexation authority delegated to it
by the legislature. Id. at 438 (citing as examples private causes of action challenging an annexation
as exceeding the statutory municipal size limits, including areas within the extraterritorial
jurisdiction of another city, including areas not contiguous with current city limits, and annexation
of an area with a boundary description that does not close); see also Hardee, 70 S.W.3d at 210. 
Generally, a city has authority to annex an area if it is within its extraterritorial jurisdiction, or if it
owns the area. Tex. Loc. Gov’t Code Ann. § 43.051 (Vernon 1999); Hardee, 70 S.W.3d at 211. 
The city’s annexation authority, however, is subject to any specific limitations imposed by the
legislature. See Hardee, 70 S.W.3d at 211 (listing the few statutory limitations on a city’s
annexation authority as of that date).
            Accordingly, we must determine whether each of the property owners’ three claims is based
on a procedural defect in the annexation process, or on the City exceeding its annexation authority
as delegated by the legislature.
            Application to Claims Pled. The property owners argue they have individual standing
because all of their challenges to the proposed annexation are based on the City’s actions outside of
its authority, rendering the attempted annexation of their areas void. This argument is similar to the
argument rejected by this court in Hardee. In Hardee, individual landowners sued to prevent
annexation based on the City of San Antonio’s failure to comply with several statutory provisions,
including failure to adopt the required annexation plan, and attempting to annex by resolution rather
than ordinance; they also asserted annexation of a particular tract was void because it was undertaken
in violation of the Open Meetings Act.


 Hardee, 70 S.W.3d at 209-10. The landowners argued they
had standing because their claims were based on the City acting outside of its statutory authority,
which made the annexation void. Id. at 209. This court held the statutory provisions did not limit
the area or type of land the City could annex, i.e., did not restrict the City’s annexation authority, and
were thus procedural requirements that could make the annexation voidable, but not void; therefore,
the private landowners had no standing.


 Id. at 212.
            First Claim. The property owners’ first claim alleges violations of the statutory procedure
set forth in Chapter 43 based on the City’s failure to give proper notice of the November 25, 2003
hearing and failure to provide more than a draft service plan. This claim involves purely procedural
defects, and must be brought by the State in a quo warranto proceeding. Alexander Oil, 825 S.W.2d
at 438-39 (lack of notice and inadequacy of service plan are procedural defects that must be raised
in a quo warranto suit); Hardee, 70 S.W.3d at 212. The property owners do not have standing to
assert their first claim. Id.; Laidlaw, 904 S.W.2d at 658.
            Second Claim. In their second claim, the property owners allege the City’s unilateral
determination of when arbitration is applicable under Chapter 43 is unlawful, and the City’s failure
to arbitrate deprives it of authority to annex their areas. The property owners cite a recent decision
by the Dallas Court of Appeals for their position that arbitration is a substantive right under Chapter
43, and denial of the right to arbitration deprives the city of its annexation authority. See Hughes v.
City of Rockwall, 153 S.W.3d 709 (Tex. App.—Dallas 2005, pet. filed February 23, 2005). In
Hughes, the city denied a private landowner’s petition to include its land in the city’s three-year
annexation plan, and the landowner sued to enforce its right to arbitration provided by §43.052(i)
after the city declined to arbitrate the dispute, stating it was “not appropriate.” Id. at 710; see Tex.
Loc. Gov’t Code Ann. § 43.052(i) (Vernon Supp. 2004-05) (providing that a landowner may
request arbitration if a municipality fails to “take action” on a petition for inclusion in the city’s
annexation plan). The Dallas court acknowledged the general rule that procedural defects must be
raised in a quo warranto proceeding, but held that § 43.052(i) provides specific legislative
authorization for a private person to initiate and sue to compel arbitration when a city takes no action
or denies the petition for inclusion of land. Hughes, 153 S.W.3d at 713-14; see also City of Wichita
Falls v. Pearce, 33 S.W.3d 415, 417 (Tex. App.—Fort Worth 2000, no pet.). The court noted in
Hughes that the legislature “did not open the door for seriatim arbitrations respecting all actions of
the municipality in its annexation process,” because § 43.052(i) only provides for arbitration of the
narrow issue framed in the statute, i.e., whether a petitioner is entitled to inclusion in the annexation
plan when a municipality proposes to separately annex areas in violation of the statute. Hughes, 153
S.W.3d at 714. 
            The City argues on appeal that the current situation is distinguishable from Hughes because
(i) it has not failed or refused to arbitrate since the arbitration request by Summerglen


 prior to
commencement of negotiations was premature, and the City has stated that it was and still is willing
to arbitrate; and (ii) the property owners are not seeking to enforce their statutory right to arbitration
as in Hughes, but rather to prohibit annexation altogether. Both distinctions are valid. The evidence
showed that the City responded to Summerglen’s June 1, 2004 arbitration request by letter stating
that under the language of § 43.0564, arbitration is not proper until after the required negotiations
have been completed. Negotiations had not yet begun on June 1, 2004. Garza testified that the
City’s July 15, 2005 letter sent after the last negotiation session noted Summerglen’s request for
arbitration, and stated the City is “agreeable and intends to proceed with arbitration” after expiration
of the 60-day period for the other areas’ arbitration requests. The record does not show that the City
refused to arbitrate, but, rather, shows it delayed arbitrating until after the mandated negotiations
were completed in accordance with the plain language of § 43.0564. See Tex. Loc. Gov’t Code
Ann. § 43.0564.
            Even if the City’s actions are interpreted as effectively denying Summerglen’s request for
arbitration, the court in Hughes did not hold that denial of the right to arbitration renders an
annexation without authority, or void, but merely that a private landowner has standing to sue to
compel arbitration under the statute. Id. at 713-14. The City argues that, at most, the property
owners have standing only to compel arbitration under § 43.0564, and that such arbitration is limited
to the terms of the service plan, not the decision of whether to annex the areas. See Tex. Loc. Gov’t
Code. Ann. §43.0564(a) (providing that if the municipality and area representatives cannot reach
an agreement for the provision of services pursuant to the statutorily required negotiations, either
party may request arbitration “to resolve the service plan issues in dispute”). We agree. The
property owners, however, are not seeking to compel arbitration in this case; rather, they are seeking
a judgment declaring the City’s denial of arbitration unlawful, and the proposed annexation as
without authority. Failure to arbitrate is a violation of the statutory annexation procedure under the
Alexander Oil analysis, and does not restrict the City’s annexation authority, but may merely make
the annexation voidable. See Alexander Oil, 825 S.W.2d at 436; Hardee, 70 S.W.3d at 210-11. The
property owners do not have standing to assert their claim for declaratory relief that the annexation
is prohibited, or void, based on the City’s delay, or even failure, to arbitrate.
            Third Claim. The property owners’ third claim alleges the proposed annexation is in direct
violation of H.B. 585, and is thus void as outside the City’s annexation authority. They assert that
they have standing under H.B. 585 to challenge the annexation as wholly void. See Alexander Oil,
825 S.W.2d at 437-38 (private citizen has standing to challenge annexation that is outside the city’s
delegated authority, and therefore “wholly void”); see also Laidlaw, 904 S.W.2d at 658 (holding
private corporation had standing to sue based on its claim that annexation exceeded the statutory area
limitations placed on city). The City concedes that annexation of the Summerglen/Canyon Springs
and Evans/Bulverde Road areas is prohibited by the plain language of H.B. 585, but argues the new
statute is unconstitutional because it is a “local or special law” that only applies to a particular area
of San Antonio, in contravention of article III, § 56 of the Texas Constitution; therefore, the law is
void and can not confer standing. See Tex. Const. art. III, § 56. The property owners’ position on
appeal is that the trial court did not rule on the constitutionality of H.B. 585, and thus the issue was
not preserved for review. They also assert that H.B. 585 is constitutional because it is not a local
law, and even if it is a local law, a rational basis exists for the special classification. Accordingly,
we must first determine whether the trial court ruled on the constitutionality of H.B. 585, and if so,
we must then determine whether or not its ruling is erroneous.
            There is a presumption that a statute enacted by the legislature is constitutional, and the
courts must interpret a statute in a manner that avoids constitutional infirmities, if possible. Barshop
v. Medina County Underground Water Conserv. Dist., 925 S.W.2d 618, 629 (Tex. 1996). A court
should only consider the constitutionality of a statute when the issue is properly raised, and when
the determination is necessary and appropriate to a decision in the case. In re Jane Doe 2, 19 S.W.3d
278, 284 (Tex. 2000). An attack on a statute’s presumed constitutionality should generally be raised
as an affirmative defense to enforcement of the statute. Id.; Tivoli Corp. v. Jewelers Mut. Ins. Co.,
932 S.W.2d 704, 708 (Tex. App.—San Antonio 1996, writ denied). A mere allegation that a statute
is unconstitutional does not entitle a party to an adjudication of the validity of the statute. Sterling
v. San Antonio Police Dept., 94 S.W.3d 790, 794 (Tex. App.—San Antonio 2002, no pet.). The
party challenging the statute’s constitutionality must point out precisely how a constitutional
principle has been violated. Tex. Workers’ Compensation Comm’n v. City of Bridge City, 900
S.W.2d 411, 415-16 (Tex. App.—Austin 1995, writ denied). Absent an appropriate pleading raising
the issue of a statute’s unconstitutionality, a trial court is generally without authority to reach the
issue. Jane Doe 2, 19 S.W.3d at 284. Finally, a court will not rule on a constitutional question,
although properly presented by the record, if there is some other ground upon which the case may
be disposed. In re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003); see also Friedrich Air Conditioning
& Refrig. Co. v. Bexar Appraisal Dist., 762 S.W.2d 763, 770-71 (Tex. App.—San Antonio 1988,
no writ).
            The City asserts the constitutionality of H.B. 585 was squarely before the trial court because
the issue was specifically raised in its written pleadings, argument and evidence were presented at
the hearing on whether the bill is an unconstitutional local law, and the property owners were seeking
to invoke their rights under H.B. 585 to enjoin and, ultimately, prohibit the proposed annexation. 
In written pleadings, the City raised the issue of the bill’s constitutionality in its response to the
application for temporary injunction, and in a counter-claim for declaratory relief included in its
second amended answer. At the hearing, the City acknowledged that its counterclaim for a
declaratory judgment that H.B. 585 is unconstitutional could not be set or ruled on because the
Attorney General had not yet been permitted the required 45-days’ notice to intervene. The City
maintained, however, that the constitutionality of the bill was at issue, and was properly before the
court, with respect to its plea to the jurisdiction and the temporary injunction because if the bill was
an unconstitutional local law, then the property owners had no standing to request the declaratory
relief sought, i.e., that H.B. 585 barred annexation of their areas.
            The City argued at the hearing that the property owners lacked standing to assert claims under
H.B. 585 because it is an unconstitutional local law, and presented evidence through Jesus Garza as
to the bill’s localized application. Garza testified that his understanding of the bill is that it applies
only to a particular area of San Antonio. He stated that San Antonio is the only major city that has
had the type of annexation plan described in the bill for 10 years.


 Moreover, he stated H.B. 585
does not apply to Houston or El Paso, the other major cities suggested by the property owners as
encompassed by the bill. Houston is not covered because it has not had an annexation plan for 10
years like San Antonio and has no areas within its ETJ that are north and east of I.H. 10. El Paso is
not covered because its population is only 500,000, and it does not have a 10-year annexation plan. 
Excerpts from the legislative history of H.B. 585 were played stating that the bill was “bracketed to
San Antonio” only. Evidence was also presented about the history of the Timberwood Park area’s
request for incorporation, which was denied by the City of San Antonio, as the impetus for H.B. 585. 
In addition to exempting the covered areas from annexation, the bill permits the areas to hold an
incorporation election, and includes the Timberwood Park area. 
            At the conclusion of the hearing, the trial court deferred making any rulings. The trial court’s
written orders issued a few days later simply state that the petitioners “have standing to assert claims
for violations of ... the provisions of HB 585,” and are entitled to the injunction, in part, because the
City “intends to ... commit an unlawful act by acting in direct contravention of a presumptively valid
and constitutional state law: HB 585, by annexing property that is identified as exempt from
annexation by the express terms of HB 585.” Despite the order’s use of the phrase “presumptively
valid and constitutional,” the City asserts the trial court necessarily ruled on H.B. 585’s
constitutionality in holding the property owners have standing to asserts rights under H.B. 585; the
property owners argue the court merely applied the presumption of constitutionality to find standing.
            Based on the record, we conclude that the issue of H.B. 585’s constitutionality was properly
raised in the trial court, and that it was necessary for the court to make a ruling on the
constitutionality of H.B. 585 in order to reach its conclusion that the property owners have standing
to seek relief under H.B. 585. Standing is a necessary component of subject matter jurisdiction. 
Barshop, 925 S.W.2d at 626. Standing may be conferred by statute, or by a plaintiff possessing an
interest in a conflict that is distinct from the general public’s interest such that the defendant’s
actions have caused the plaintiff a particular injury. Williams v. Lara, 52 S.W.3d 171, 178 (Tex.
2001). Here, the property owners assert standing conferred by a statute, H.B. 585. An
unconstitutional statute is void, and can not provide a basis for any right or relief. In re Hinterlong,
109 S.W.3d 611, 636 (Tex. App.—Fort Worth 2003, orig. proceeding) (citing Reyes v. State, 753
S.W.2d 382, 383-84 (Tex. Crim. App. 1988)). Because we conclude that resolution of the
constitutionality of H.B. 585 was necessary to a determination of whether the property owners have
standing to assert their rights under the bill, we interpret the trial court’s order finding standing as
containing an implicit ruling that H.B. 585 is constitutional. Accordingly, we must next determine
whether H.B. 585 is constitutional, i.e., not an unconstitutional “local or special law.”
            The constitutionality of a statute is a question of law which we review de novo. State v.
Hodges, 92 S.W.3d 489, 494 (Tex. 2002). The City complains that H.B. 585 on its face is a
prohibited local law. See Barshop, 925 S.W.2d at 627 (to sustain facial challenge, party must
establish that statute, by its terms, always operates unconstitutionally). Article III, section 56, of the
Texas Constitution prohibits the legislature from passing any local or special law, except as
otherwise provided in the Constitution. Tex. Const. art. III, § 56. Although the terms are often
used interchangeably, a “local law” is one limited to a specific geographic region of the State, while
a “special law” is limited to a particular class of persons distinguished by a characteristic other than
geography. Maple Run at Austin Mun. Util. Dist. v. Monaghan, 931 S.W.2d 941, 945 (Tex. 1996). 
The purpose of Article III, section 56 is to “prevent the granting of special privileges and to secure
uniformity of law throughout the State as far as possible.” Id. (quoting Miller v. El Paso County,
136 Tex. 370, 150 S.W.2d 1000, 1001 (1941)). A law is not necessarily a prohibited “local law”
merely because its scope is limited to a particular geographic area. Id. (listing examples of local laws
upheld based on reasonable distinctions). The ultimate question under section 56 is whether there
is a reasonable basis for the legislature’s special classification provided in the law. Id. at 947; see
also Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791, 793 (1950) (the ultimate test is whether
there is a reasonable basis for the classification and whether the law operates equally on all within
the class). After a court determines that a law is a local or special law, it must decide whether the
law is otherwise permitted by the Constitution, or whether it is a prohibited local law. Maple Run,
931 S.W.2d at 948.
            Here, the evidence presented at the hearing showed that the application of H.B. 585 is limited
to a specific geographic region located within the City of San Antonio’s ETJ. The plain language
of the statute states that it applies only to an area north and east of I.H. 10 that falls within the ETJ
of a municipality with a population of one million or more that has operated under a particular type
of three-year annexation plan for at least 10 years. The main evidence presented at the hearing on
this issue was Garza’s testimony. Garza testified that San Antonio is the only municipality that
meets the statute’s criteria. He explained why Houston and El Paso, the cities suggested by the
property owners as also falling within H.B. 585, do not qualify. In addition, excerpts from the
legislative history were admitted which stated that the bill was “bracketed to San Antonio” only. 
Clearly, based on the language of the statute itself and the evidence presented at the hearing, H.B.
585 is a local law.
            We must next determine whether there is a reasonable basis for the bill’s special
classification and whether the law is otherwise permitted by the Constitution; if not, it is a prohibited
local law under article 56 of the Constitution. Maple Run, 931 S.W.2d at 947-48. The property
owners argued at the hearing that there was a rational basis for the special classification of the
covered areas because the bill gives those areas a right to vote on incorporation; however, no
evidence was presented as to why it is reasonable to single out those areas, as opposed to other areas
of San Antonio or the State, for special treatment. Finally, no evidence was presented that H.B. 585
is otherwise permitted by the Texas Constitution, and we find no such authorization. See id. at 948
(noting that section 59 of the Constitution authorizes the legislature to pass local legislation for
conservation purposes).
            Based on the record before us, we hold that H.B. 585 singles out a specific geographic area
of the City of San Antonio’s ETJ for special treatment without any reasonable basis, and without
other authority in the Constitution, and is therefore a prohibited local law. See id. at 948-49 (holding
statute was prohibited local law based on evidence that Maple Run was the only municipal utility
district that met statute’s criteria, legislature had intended the statute to apply only to that district,
and there was no reasonable basis for the special treatment). Because H.B. 585 is an unconstitutional
local law, the property owners do not have standing to assert a claim for relief under H.B. 585.
            Conclusion.    Based on the foregoing analysis, we hold the property owners lack standing
to challenge the proposed annexation. Accordingly, we reverse the trial court’s order denying the
City’s plea to the jurisdiction, and vacate the order granting the temporary injunction against the
City. See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (to prevail on a request for
a temporary injunction, the applicant must prove, among other elements, the existence of a cause of
action against the defendant for which it may be granted relief); see also Khaledi v. H.K. Global
Trading, Ltd., 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). Finally, we dismiss
the property owners’ claims against the City. Tex. R. App. P. 43.2(e).
 
                                                                                    PER CURIAM