

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00412-CV

_____

COMANCHE PEAK RANCH, LLC, LAURA GRISHAM, RONALD HASTY, DIANNE HASTY, MICHAEL W. THOMAS AS TRUSTEE FOR MICHAEL W. THOMAS FAMILY TRUST, HARVEY THOMAS AS TRUSTEE FOR HARVEY IKE THOMAS FAMILY TRUST, AND SANDRA WILLIAMS, Appellants

V.

CITY OF GRANBURY, TEXAS, Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2019200

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

A group of property owners filed suit to challenge appellee City of Granbury's annexation of land. In this accelerated appeal,[1] the property owners complain of the granting of the city's plea to the jurisdiction. Because the property owners' complaints must be brought in a quo warranto proceeding, we affirm the trial court's dismissal but modify the judgment to reflect that the dismissal is without prejudice.

### II. BACKGROUND[2]

The Property Owners are appellants Comanche Peak Ranch, LLC, Laura Grisham, Ronald Hasty, Dianne Hasty, Michael W. Thomas as Trustee for the Michael W. Thomas Family Trust, Harvey Thomas as Trustee for the Harvey Ike Thomas Family Trust, and Sandra Williams, each of whom own property within the extraterritorial jurisdiction of Granbury.[3] They, and others not involved in this appeal, filed suit against the city seeking declaratory judgment and ancillary injunctive

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001(3)(B); Tex. R. App. P. 28.1.

[2]Because this case was resolved by the trial court based on the pleadings, the facts are taken from the pleadings on file at the time of the hearing on the plea to the jurisdiction.

[3]In their response to the plea to the jurisdiction, the Property Owners state that they "own separate parcels of property, some of which is entirely within the City's extraterritorial jurisdiction ('ETJ') and some of which is only partially within the City's ETJ."

relief as well as attorneys' fees based on what they allege is the "City's 'hurry up' effort to involuntarily annex property in its extraterritorial jurisdiction (ETJ) to 'beat the clock' before pending (and now extant) legislation to *preclude* such involuntary annexation took effect."

It is undisputed that the City sent the Property Owners proposals for "development agreements" that, if signed, would have forestalled annexation. The parties' dispute centers on whether the city's proposals meet the requirements of the applicable statutes and, if not, whether the failure to meet those requirements renders the annexation void. In their original petition, the Property Owners allege that the City "ignored the requirement for proper legal descriptions of the properties herein that they attempted to annex in the City's proposed Development Agreements." They further contend that the City "ignored the clear terms of the Local Government Code to protect agriculturally exempt ('AG Exempt') property from involuntary annexation." Arguing that the City failed to offer development agreements that complied with the Local Government Code, the Property Owners conclude that "[t]his led to a *void* effort to annex . . . ."

According to the Property Owners, the City adopted Resolution No. 19-12 on April 2, 2019, declaring its intention to annex land totaling 2,470 acres, including their land, all of which are "AG Exempt properties." The City sent letters dated April 3, 2019, to the Property Owners informing them of the City's proposal to annex their property. The City sent additional letters two days later which recognized that the

3

property was "AG Exempt" and "attached a development agreement that is being offered to you under Section 43.016 of the Texas Local Government Code." According to the second letter,

> If you [Property Owner] do execute the agreement, you will be exempt from annexation by the City for the period of time set forth in the agreement (10 years); provided, however[,] that under the terms of the agreement, any development of your property would allow the City to commence annexation.

The letter further provided that if the Property Owner "decline[s] to make the agreement, the City may proceed to annex your property."

According to the Property Owners, they "attempted to negotiate modifications of the proposed Development Agreements that would be in harmony with the statute." However, no agreement was reached, and at its June 4, 2019 meeting, the City approved five annexation ordinances.

In response to the lawsuit, the City filed an answer, generally denying the allegations, and a plea to the jurisdiction, asserting that any challenge to the annexation must be brought by a quo warranto proceeding. The Property Owners filed a response to the plea to the jurisdiction. After a hearing, the trial court granted the plea to the jurisdiction and entered an order dismissing the case with prejudice. This appeal followed.

4

## III. DISCUSSION

In their appeal, the Property Owners present ten issues,[4] most of which attack the City's argument that quo warranto is the only avenue to challenge the annexation. Because the appropriateness of a quo warranto proceeding to the facts of this case is dispositive of all of the issues, we will only address that issue.

---

[4]In their "Issues Presented," the Property Owners state

1. Did the trial court err in granting City's Plea to the Jurisdiction?

2. Did the trial court have jurisdiction?

3. Did the complaints of Property Owners that the Annexation Ordinances were void have to proceed by a *quo warranto* proceeding, or were they properly brought in this collateral action?

4. Are City's Annexation Ordinances void?

5. Was City required to propose a Development Agreement that complied with Tex. Local Gov't Code §§ 43.016 and 212.172 to have authority to annex the properties owned by Plaintiffs ("Property Owners") in City's ETJ?

6. Did City's proposed Development Agreement comply with Tex. Local Gov't Code §§ 43.016 and 212.172?

7. Did City's proposed Development Agreement comply with the property description requirement of Tex. Local Gov't Code § 212.172(c)?

8. Was sovereign immunity waived?

9. Did Property Owners have standing to sue?

10. Was unauthorized and unsubstantiated self-serving argument by amici curiae [Texas Municipal League, which filed a letter brief with the trial court] about supposed legislative history competent or admissible?

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The claims asserted may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id.* Whether a court has subject matter jurisdiction is a legal question. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

A trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must do. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland*, 34 S.W.3d at 555. If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder will resolve the question. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. The standard mirrors our review of summary judgments where we take as true all evidence favorable to the non-movant, indulging every reasonable inference and

resolving any doubts in the non-movant's favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

## B. Applicable Law

Generally, the only appropriate mechanism for challenging the validity of an annexation is a quo warranto proceeding, in which "the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State who have full control of the proceeding." *Alexander Oil Co. v. Seguin*, 825 S.W.2d 434, 437 (Tex. 1991) (quoting *Fuller Springs v. State ex rel. City of Lufkin*, 513 S.W.2d 17, 19 (Tex. 1974)). The purpose of a quo warranto proceeding is to question the right of a person or corporation, including a municipality, to exercise a public franchise or office. *Id.* at 436–37. Quo warranto proceedings are brought in the name of the State by the attorney general or a district or county attorney. Tex. Civ. Prac. & Rem. Code Ann. §§ 66.001–.003.

Quo warranto proceedings serve the purpose of avoiding the specter of numerous successive suits by private parties attacking the validity of annexations. *Alexander Oil Co.*, 825 S.W.2d at 437. Because the judgments in suits brought by private parties are binding only on those parties, conflicting results might be reached in subsequent suits by other individuals. *Id.* By requiring quo warranto proceedings, these conflicting results are avoided because the judgment settles the validity of the annexation on behalf of all property holders in the affected area. *Id.*

7

A quo warranto proceeding "is the proper way to challenge procedural faults such as the adequacy of a service plan, lack of notice, lack of a quorum for hearing, and 'other deficiencies in the procedure of adopting the annexation ordinance.'" *Town of Fairview v. Lawler*, 252 S.W.3d 853, 856 (Tex. App.—Dallas 2008, no pet.) (quoting *City of San Antonio v. Hardee*, 70 S.W.3d 207, 210 (Tex. App.—San Antonio 2001, no pet.)). The State, as opposed to an individual landowner, must also bring an action "to question irregular use of the delegated annexation authority." *City of Shavano Park v. Ard Mor, Inc.*, No. 04-14-00781-CV, 2015 WL 6510544, at *5 (Tex. App.—San Antonio Oct. 28, 2015, no pet.) (mem. op. on reh'g).

Even though it is the State's prerogative to bring a pro warranto proceeding, under limited circumstances, a private party may collaterally attack an annexation ordinance as void, as opposed to voidable. *Sunchase Capital Grp., Inc. v. City of Crandall*, 69 S.W.3d 594, 596 (Tex. App.—Tyler 2001, no pet.). The determination of whether an individual landowner, as opposed to the State in a quo warranto proceeding, has standing to challenge annexation turns on whether the challenge attacks a city's authority to annex the area or merely complains of a violation of statutory procedure. *City of Shavano Park*, 2015 WL 6510544, at *5 (citation omitted). "Individuals have been allowed to bring private causes of action when challenging annexation of territory that (i) exceeds statutory size limitations, (ii) is within the corporate limits of another municipality, (iii) is not contiguous with current city limits, and (iv) has a boundary description that does not close." *Town of Fairview*, 252 S.W.3d at 856. But

8

procedural irregularities in the exercise of a city's annexation power do not render an annexation void but may render an annexation voidable. *Hardee*, 70 S.W.3d at 211; *City of Richmond v. Pecan Grove Mun. Util. Dist.*, No. 01-14-00932-CV, 2015 WL 4966879, at *2 (Tex. App.—Houston [1st Dist.] Aug. 20, 2015, pet. denied) (mem. op.).

In deciding whether a private party has standing to challenge an annexation, an appellate court must decide whether the challenge attacks the city's authority to annex the area in question or simply complains of some violation of statutory procedure. *Werthmann v. City of Fort Worth*, 121 S.W.3d 803, 806 (Tex. App.—Fort Worth 2003, no pet.). Merely showing an irregularity in a city's exercise of its annexation authority is not enough. *Id.*

In *Werthmann*, this court addressed the issue of "whether the requirements of Texas Local Government Code [S]ection 43.052(b)–(c) are merely procedural limitations and/or whether they are substantive limitations on a municipality's authority to annex land." *Id.* at 806. At that time, Section 43.052 required a municipality to prepare an annexation plan that specifically identified annexations that may occur beginning on the third anniversary of the date the annexation plan is adopted. Looking at two prior Texas court decisions, we noted that "[C]hapter 43 of the Texas Local Government Code and the legislative history of the 1999 amendments refer to the plan requirements as procedural." *Id.*; *see Hardee*, 70 S.W.3d at 214 (holding that the landowners lacked standing to challenge annexation based on

9

procedural violations of Section 43.052, the City Charter, and the City Code); *City of Balch Springs, Tex. v. Lucas*, 101 S.W.3d 116, 119, 122 (Tex. App.—Dallas 2002, no pet.) (dismissing the case as procedural based on allegations that the City was not acting in accordance with its own annexation plan, was attempting to annex property under an exception to the applicable statute, and was attempting to circumvent the statute by arbitrarily omitting certain parcels from the annexation ordinance). Therefore, we agreed that the provisions of Section 43.052 are "procedural requirements for annexation rather than limitations on a municipality's inherent authority to annex land." *Werthmann*, 121 S.W.3d at 807.

Similarly, property owners' claims of "violations of the statutory procedure set forth in Chapter 43 based on the City's failure to give proper notice of the [third public] hearing and failure to provide more than a draft service plan" have been rejected as "purely procedural defects." *City of San Antonio v. Summerglen Prop. Owners Ass'n, Inc.*, 185 S.W.3d 74, 84–85 (Tex. App.—San Antonio 2005, pet. denied); *see also Alexander Oil Co.*, 825 S.W.2d at 438 (holding that allegations regarding whether service plan was adequate and quorum was required to conduct hearing were matters that could be raised in quo warranto proceedings but not in a private challenge).

As noted above, individuals have been allowed to bring private causes of action when challenging annexation of territory that (i) exceeds statutory size limitations, (ii) is within the corporate limits of another municipality, (iii) is not contiguous with current city limits, and (iv) has a boundary description that does not close. *See*

*Alexander Oil Co.*, 825 S.W.2d at 438. "The common trait in these cases is whether the municipality exceeded the annexation authority delegated to it by the Legislature." *Id.* Accordingly, we must determine whether the Property Owners' claims are based on a procedural defect in the annexation process or on the City's exceeding its annexation authority as delegated by the legislature. *Summerglen Prop. Owners Ass'n*, 185 S.W.3d at 84.

Chapter 43 of the Texas Local Government Code governs municipal annexation, including a municipality's general authority to annex and the procedures it must follow. *Town of Fairview v. Stover*, No. 05-01-01318-CV, 2002 WL 1981371, *3 (Tex. App.—Dallas Aug. 29, 2002, no pet.) (not designated for publication). Section 43.016 sets limits on the ability of a municipality to annex land qualified for agricultural or wildlife management use or as timber land. As relevant to this case, it provides:

> (b) A municipality may not annex an area to which this section applies unless:
>
>> (1) the municipality offers to make a development agreement with the landowner under Section 212.172 that would:
>>
>>> (A) guarantee the continuation of the extraterritorial status of the area; and
>>>
>>> (B) authorize the enforcement of all regulations and planning authority of the municipality that do not interfere with the use of the area for agriculture, wildlife management, or timber; and

(2) the landowner declines to make the agreement described in Subdivision (1).

Tex. Loc. Gov't Code Ann. § 43.016(b).

Texas Local Government Code Section 212.172 sets out the requirements of the development agreement. It provides in part:

(b) The governing body of a municipality may make a written contract with an owner of land that is located in the extraterritorial jurisdiction of the municipality to:

(1) guarantee the continuation of the extraterritorial status of the land and its immunity from annexation by the municipality;

(2) extend the municipality's planning authority over the land by providing for a development plan to be prepared by the landowner and approved by the municipality under which certain general uses and development of the land are authorized;

(3) authorize enforcement by the municipality of certain municipal land use and development regulations in the same manner the regulations are enforced within the municipality's boundaries;

(4) authorize enforcement by the municipality of land use and development regulations other than those that apply within the municipality's boundaries, as may be agreed to by the landowner and the municipality;

(5) provide for infrastructure for the land, including:

(A) streets and roads;

(B) street and road drainage;

(C) land drainage; and

(D) water, wastewater, and other utility systems;

(6) authorize enforcement of environmental regulations;

(7) provide for the annexation of the land as a whole or in parts and to provide for the terms of annexation, if annexation is agreed to by the parties;

(8) specify the uses and development of the land before and after annexation, if annexation is agreed to by the parties; or

(9) include other lawful terms and considerations the parties consider appropriate.

Tex. Loc. Gov't Code Ann. § 212.172(b). Among other requirements, an agreement under this subchapter "must . . . contain an adequate legal description of the land." *Id.* § 212.172(c)(2). In addition, "[t]he total duration of the contract and any successive renewals or extensions may not exceed 45 years." *Id.* § 212.172(d).

## C. Application of Law to Facts

The Property Owners contend that this case falls under the exception to the general rule that their challenges can only be brought in a quo warranto proceeding. They contend that "because [the] City was without authority to adopt them," the annexation ordinances are void. According to the Property Owners, to be authorized to annex ETJ property, it was necessary that a development agreement compliant with the statutory requirements be proposed to them. Here, although a development agreement was proposed, the Property Owners allege that it was not compliant with either Texas Local Government Code Sections 43.016 or 212.172. Specifically, they contend that "the Development Agreement (a) did not guarantee the continuation of the ETJ status and exemption from annexation, and (b) did not contain a property

13

description." The Property Owners argue that because the proposed Development Agreement did not comply with either Section 43.016(b)(1)(A) or any of the annexation provisions of Section 212.172(b), it did not comply with Section 43.016(b). Particularly, "it was not 'under' [Section] 212.172(b)."

Here, the proposed development agreement consisted of nine pages, including the following provisions:

SECTION 1.
CONDITIONAL IMMUNITY FROM ANNEXATION

A. The City guarantees the continuation of the extraterritorial status of the Property, its immunity from involuntary annexation by the City, and its immunity from City property taxes, for the term of this Agreement, subject to the provisions of this Agreement. Except as provided in this Agreement, the City agrees not to annex the Property [ ] and agrees not to involuntarily institute proceedings to annex the Property.

. . . .

SECTION 3
EVENTS THAT TERMINATE IMMUNITY FROM ANNEXATION

A. The occurrence of any of the following events shall constitute a petition for voluntary annexation by the Owner and shall terminate the guarantee of immunity from annexation: . . . If any portion of the Property is conveyed to a person or entity other than the Owner [with certain exceptions].

. . . .

SECTION 4
TERM

Subject to Section 3 of this Agreement, the term of this Agreement (the "Term") is ten (10) years from the date that the City Manager's signature to this Agreement is acknowledged by a public

14

notary. Unless the Property is annexed pursuant to Section 3, the Owner and all of the Owner's heirs, successors and assigns shall be deemed to have filed a petition for voluntary annexation before the end of the Term, for annexation of the Property to be completed on or after the end of the Term. The annexation of the Property at the end of the term shall be deemed a voluntary annexation under any applicable law now or then existing. Prior to the end of the Term, the City may commence procedures to annex the Property.

As set out above, in their petition for declaratory relief, the Property Owners generally contend that the annexation ordinances are void for failure of the City to comply with Sections 43.016 and 212.172 of the Local Government Code. First, they complain that the development agreement "did not guarantee the continuation of the ETJ status and exemption from annexation." They emphasize the language "may not annex . . . unless" that is found in Section 43.016(b). However, the Property Owners confuse the requirement of being "offered" a development agreement with acceptance of the agreement. In this case, there was no development agreement reached. Adequacy of the proposed development agreement, like adequacy of a service plan, is a defect in the procedure of adopting the annexation ordinance and, therefore, must be brought in a quo warranto proceeding. *See Alexander Oil Co.*, 825 S.W.2d at 438 ("Alexander's allegations directed at whether the service plan was adequate and whether a quorum was required to conduct the hearing are matters that could be raised in a direct attack by quo warranto, but are insufficient grounds for a private challenge.").

Second, the Property Owners complain that the development agreement did not contain a property description. But Section 212.172(c)(2) requires only an "adequate legal description." The City notes that "the legal description was requested from each landowner through the 'R' number with the taxing entity documents[] as a means to identify the property within the mapping and to confirm the existence of any qualifying exemptions to said property." Again, the development agreements sent to the property owners were not final, but only proposals. Because the Property Owners did not accept the proposed development agreements, a final agreement was never entered.[5] In addition, to the extent the property description requirement serves the purpose of notice, deficient notice is a procedural defect that does not render an annexation void. *See Jimenez v. City of Aransas Pass*, No. 13-17-00514-CV, 2018 WL 6565090, at *2 (Tex. App.—Corpus Christi 2018, no pet.) (mem. op.) (holding that the statutory three-year plan requirement exists to give the public better notice of proposed city growth and services and that deficient notice is a procedural defect that does not render an annexation void).

The Property Owners rely on *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656 (Tex. 1995), as having a "comparable issue"—"whether the metes and bounds description of the annexed property was proper." *Id.* at 660. However,

---

[5]The Property Owners' reliance on *Town of Fairview* for the proposition that "'lack of consent' was not merely a 'procedural issue'" is misplaced. 2002 WL 1981371, at *3. In that case, consent was required because the operative statute did not permit unilateral annexation. *Id.*

16

*Laidlaw* looked to the metes and bounds description only as it pertained to the issue addressed by the court, which was "whether a Type A general-law municipality may annex a contiguous area pursuant to [S]ection 43.024 of the Local Government Code, when the annexation causes it to exceed the statutory area limitations that were applicable when [the municipality] initially incorporated under 6.001 of the Code." *Id.* at 657.

Here, central to both of the Property Owners' contentions are procedural requirements for annexation rather than limitations on a municipality's inherent authority to annex land. *See Werthmann*, 121 S.W.3d at 807. The Property Owners do not dispute the inherent authority of the City to involuntarily annex property in its ETJ, subject to compliance with the Local Government Code, under the law in existence at the time of this annexation. Rather, they challenge only whether the City has followed the proper procedures in doing so. As such, their challenges must be brought in a quo warranto proceeding. Therefore, the trial court did not err in dismissing their declaratory relief action. But because the claims of the Property Owners can still be brought by the State through a quo warranto proceeding, the order should be modified to reflect that the dismissal is without prejudice. *See Sunchase Capital Grp.*, 69 S.W.3d at 598 (affirming the trial court's order of dismissal but modifying it by striking the language "that Plaintiffs take nothing by this suit" because "if the trial court did not have jurisdiction to act, then it could not order that Appellants take nothing by their suit"); *but see Sykes*, 136 S.W.3d at 636–37 (holding

that an order granting a governmental unit's plea to the jurisdiction should be "with prejudice" when the claimant has failed to state a claim that is cognizable under the Texas Tort Claims Act).

## IV. CONCLUSION

Having held that the claims brought by the Property Owners in this case can only be brought by the State in a quo warranto proceeding, but holding that the judgment should be modified to reflect that the dismissal is without prejudice, we affirm the trial court's judgment as modified.

/s/ Dana Womack

Dana Womack
Justice

Delivered: April 23, 2020