ACCEPTED
04-14-00781-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/9/2015 12:09:37 PM
KEITH HOTTLE
CLERK

**NO. 04-14-00781-CV**

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

02/9/2015 12:09:37 PM

KEITH E. HOTTLE
Clerk

CITY OF SHAVANO PARK,
*Defendant-Appellant*

v.

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP;
AND TEXAS ARDMOR MANAGEMENT, LLC,
*Plaintiffs-Appellees*

From the District Court of Bexar County
407th Judicial District of Texas
No. 2014-CI-10796

**BRIEF OF APPELLEES**

KAREN L. LANDINGER
State Bar No. 00787873
klandinger@cbylaw.com
JAY K. FARWELL
State Bar No. 00784038
jfarwell@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 West IH-10, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)

*Co-Counsel*
David L. Earl
State Bar No. 06343030
dearl@earl-law.com
EARL & ASSOCIATES, P.C.
Pyramid Building
601 NW Loop 410, Suite 390
San Antonio, Texas 78216
(210) 222-1500 (Office)
(210) 222-9100 (Fax)

ATTORNEYS FOR APPELLEES,
ARD MOR, INC., TEXAS ARDMOR
PROPERTIES, LP AND TEXAS
ARDMOR MANAGEMENT, LLC

## IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Defendant / Appellant**
   City of Shavano Park ("Shavano")

2. **Counsel for Defendant / Appellant**
   Patrick C. Bernal
   Elizabeth M. Provencio
   DENTON NAVARRO ROCHA BERNAL HYDE & ZECH
   A Professional Corporation
   2517 N. Main Avenue
   San Antonio, Texas 78212
   (210) 227-3243 (Office)
   (210) 225-4481 (Fax)
   patrick.bernal@rampage-sa.com
   elizabeth.provencio@rampage-sa.com

3. **Plaintiffs / Appellees**
   ARD MOR, Inc.
   Texas ARDMOR Properties, LP
   Texas ARDMOR Management, LLC

4. **Counsel for Plaintiffs / Appellees**
   Karen L. Landinger
   Jay K. Farwell
   COKINOS, BOSIEN & YOUNG
   10999 West IH-10, Suite 800
   San Antonio, Texas  78230
   (210) 293-8700 (Office)
   (210) 293-8733 (Fax)
   klandinger@cbylaw.com
   jfarwell@cbylaw.com

5. **Co-Counsel for Plaintiffs /Appellees**
   David L. Earl
   EARL & ASSOCIATES, P.C.
   Pyramid Building
   601 NW Loop 410, Suite 390
   San Antonio, Texas  78216
   (210) 222-1500 (Office)
   (210) 222-9100 (Fax)
   dearl@earl-law.com

6. **Interested Party at Trial Court**
   Lockhill Ventures, LLC ("Lockhill")

7. **Counsel for Interested Party at Trial Court**
Lance H. "Luke" Beshara
Randall A. Pulman
Brandon L. Grubbs
PULMAN, CAPPUCCIO, PULLEN,
  BENSON & JONES, LLP
2161 N.W. Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 (Office)
(210) 892-1610 (Fax)
lbeshara@pulmanlaw.com
rpulman@pulmanlaw.com
bgrubbs@pulmanlaw.com

/s/   *Karen L. Landinger*
KAREN L. LANDINGER
JAY K. FARWELL

ATTORNEYS FOR APPELLEES, ARD MOR, INC., TEXAS ARDMOR PROPERTIES, LP AND TEXAS ARDMOR MANAGEMENT, LLC

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that the issues before the Court involve questions of law that are well settled. Therefore, Appellees do not request oral argument at this time. However, in the event that Appellant requests oral argument, Appellees request the opportunity to respond.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      Shavano Intentionally Excluded Gas Stations from its
          B-2 Zoning Classifications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    Shavano Entered into a Contract with Lockhill Which
          Purports to Grant  Lockhill the Unfettered Right to Build
          a Gas Station. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    III.   Ard Mor Sought a Declaration That Gas Stations Are Not
          Permitted on  Lockhill's Property on Five Different Grounds. . . . . . 4

    IV.   Shavano Testified That it Would Interpret its Ordinance
          to Include Lockhill's Proposed Gas Station, and That it
          Drafted its Ordinances to Be "Ambiguous on Purpose". . . . . . . . . . 4

    V.    The Trial Court Found That Gas Stations Are Not Permitted
          by Shavano's Ordinances and That Injunctive Relief Is
          Necessary to Prevent Harm to Ard Mor. . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         A.    Pleadings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.     Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.     Shavano's Issues Do Not Address All Possible Grounds
     Supporting the Trial Court's Order. . . . . . . . . . . . . . . . . . . . . . . 12

III.    Because the Trial Court and City Manager Disagree on the
     Meaning of an Ordinance, Shavano Will Be Affected by the
     Declaratory Relief Sought by Ard Mor. . . . . . . . . . . . . . . . . . . . . . 15

     A.     Shavano is a proper, if not mandatory, party
            pursuant to section 37.006(a). . . . . . . . . . . . . . . . . . . . . . . 17

     B.     Shavano does not challenge that it is a proper party
            under section 37.006(a). . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.    Shavano's Admission That its Ordinance Is Ambiguous
     as Written Provides Grounds to Invalidate the Ordinance.. . . . . . . . . 20

V.     Shavano's Development Agreement and Annexation Ordinance
     Are Void Contract Zoning Because They Provide Lockhill a
     Contractual Right to Develop the Disputed Property in a
     Manner Inconsistent with Shavano's Current Ordinances.. . . . . . . . . 23

     A.     An allegation that an annexation ordinance constitutes
            contract zoning is an allegation that the annexation
            ordinance is void.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     B.     The trial court's finding that Ard Mor's operations will
            be interrupted and the property value will be negatively
            affected establishes that Ard Mor is suffering a
            particularized injury as a result of Shavano's actions. . . . . . . 27

     C.     Challenges to annexation are not limited to
            *quo warranto* proceedings. . . . . . . . . . . . . . . . . . . . . . . . . 30

VI.    The Ripeness of the Matter Before the Court Was Established
       When the Court Found That Ard Mor Was Entitled to
       Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII.   If Shavano's Plea Has Merit, this Matter Should Be Remanded. . . . 34

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# INDEX OF AUTHORITIES

**CASES:**

*2800 La Frontera No. 1A Ltd. v. City of Round Rock*,
No. 03-08-00790-CV, 2010 WL 143418
(Tex. App.—Austin Jan. 12, 2010, no pet.) (mem. op.). . . . . . . . . . . . . . . 26

*Alexander Oil Co. v. City of Seguin*,
825 S.W.2d 434 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

*Baggett v. Bullitt*,
377 U.S. 360 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 35

*Britton v. Tex. Dep't of Criminal Justice*,
95 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2002, no pet.). . . . . . . . . 19

*Brooks v. Northglen Ass'n*,
141 S.W.3d 158 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Crowley v. Ray*,
No. 2-09-290-CV, 2010 WL 1006278
(Tex. App.—Fort Worth Mar. 18, 2010, no pet.). . . . . . . . . . . . . . . . . . . 18

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*City of La Porte v. Barfield*,
898 S.W.2d 288 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Laredo v. Rio Grande H20 Guardian*,
No. 04-10-00872-CV, 2011 WL 3122205
(Tex. App.—San Antonio July 27, 2011, no pet.). . . . . . . . . . . 28, 29, 30, 32

*City of Mesquite v. Aladdin's Castle, Inc.*,
   559 S.W.2d 92 (Tex. Civ. App.—Dallas 1977)
   *writ ref'd n.r.e*, 570 S.W.2d 377 (Tex. 1978). . . . . . . . . . . . . . . . . . . . . 21, 22

*City of Port Isabel v. Pinnell*,
   161 S.W.3d 233 (Tex. App.—Corpus Christi 2005, no pet.). . . . . . . . . 23, 31

*City of Richardson v. Gordon*,
   316 S.W.3d 758 (Tex. App.—Dallas 2010, no pet.). . . . . . . . . . . . . . . . . 32

*City of San Antonio v. Summerglen Prop. Owners Ass'n Inc.*,
   185 S.W.3d 74 (Tex. App.—San Antonio 2005, pet. denied). . . . . . . . 23, 24

*City of Waco v. Kirwan*,
   298 S.W.3d 618 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cokins v. City of Lakeway*,
   No. 03-12-00083-CV, 2013 WL 4007522
   (Tex. App.—Austin July 25, 2013, no pet.). . . . . . . . . . . . . . . . . . . . . . . 24

*County of Cameron v. Brown*,
   80 S.W.3d 549 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 35

*Dallas County, Tex. v. Logan,*
   420 S.W.3d 412 (Tex. App.—Dallas 2014), *reh'g overruled*
   (Feb. 12, 2014), *review denied* (Oct. 3, 2014). . . . . . . . . . . . . . . . . . . . . 35

*Dallas Indep. Sch. Dist. v. Lee*,
   No. 05-01-00359-CV, 2002 WL 109626
   (Tex. App.—Dallas Jan. 29, 2002, no pet.). . . . . . . . . . . . . . . . . . . . . . . 13

*Epernay Cmty. Ass'n, Inc. v. Shaar*,
   349 S.W.3d 738 (Tex. App.—Houston [14th Dist.] 2011, no pet.). . . . . . 17

*In re K.G.S.*,
   No. 14–12–00673–CV, 2014 WL 801127
   (Tex. App.— Houston [14th Dist.] Feb. 27, 2014, no pet.). . . . . . . . . . . . 19

*Lindig v. City of Johnson City*,
  No. 03-11-00660-CV, 2012 WL 5834855
  (Tex. App.—Austin Nov. 14, 2012, no pet.) (mem. op.). . . . . . . . . . . . . . . 22

*Noell v. City of Carrollton*,
  431 S.W.3d 682 (Tex. App.—Dallas 2014, pet. denied). . . . . . . . . . . . . . . 20

*Robinson v. Parker*,
  353 S.W.3d 753 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

*Save Our Springs Alliance, Inc. v. City of Dripping Springs*,
  304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied). . . . . . . . . . . . 23, 29

*Scott v. Alphonso Crutch LSC Charter School, Inc.*,
  392 S.W.3d 165 (Tex. App.—Austin 2010, pet. denied). . . . . . . . . . . . . . . 35

*Southwestern Bell Telephone, L.P. v. Harris County*,
  267 S.W.3d 490 (Tex. App.—Houston [14th Dist.] 2008, no pet.). . . . . . . 19

*Super Wash, Inc. v. City of White Settlement*,
  131 S.W.3d 249 (Tex. App.—Fort Worth 2004, pet. granted). . . . . . . . . . . 26

*Texas A & M Univ. Sys. v. Koseoglu*,
  233 S.W.3d 835 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
  852 S.W.2d 440 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Texas Dep't of Parks & Wildlife v. Miranda*,
  133 S.W.3d 217 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Texas Rivers Protection Ass'n v. Texas Natural Res. Conservation Comm'n*,
  910 S.W.2d 147 (Tex. App.—Austin 1995, writ denied). . . . . . . . . . . 29, 30

*Tex. Educ. Agency v. Leeper*,
  893 S.W.2d 432 (Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tex. Lottery Comm'n v. First State Bank of DeQueen*,
325 S.W.3d 628 (Tex. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Tex. Natural Res. Conservation Comm'n v. IT–Davy*,
74 S.W.3d 849 (Tex. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tex. Parks & Wildlife Dep't v. Morris*,
129 S.W.3d 804 (Tex. App.—Corpus Christi 2004, no pet.).. . . . . . . . . . . 11

*Waco Indep. Sch. Dist. v. Gibson*,
22 S.W.3d 849 (Tex. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

**STATUTES AND RULES:**

Tex. Civ. Prac. & Rem. Code Ann. § 37.004.. . . . . . . . . . . . . . . . . . . . . . . . 16
Tex. Civ. Prac. & Rem. Code Ann. § 37.006 . . . . . . . . . . . 9, 16, 17, 18, 19, 20, 22
Tex. R. Civ. P. 39. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

NO. 04-14-00781-CV

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

CITY OF SHAVANO PARK,
*Defendant-Appellant*

v.

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP;
AND TEXAS ARDMOR MANAGEMENT, LLC,
*Plaintiffs-Appellees*

From the District Court of Bexar County
407th Judicial District of Texas
No. 2014-CI-10796

**BRIEF OF APPELLEES**

TO THE FOURTH COURT OF APPEALS:

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP; and TEXAS

ARDMOR MANAGEMENT, LLC (collectively "Ard Mor" or "Appellees"), file this

Brief of Appellees.

## ISSUES PRESENTED

The issues presented for review are as follows:

(1)    Whether the trial court erred in denying Shavano's jurisdictional challenges?

(2)    Whether a municipality should be joined in a suit for declaratory judgment to construe the meaning of the municipality's ordinances?

(3)    Whether a municipality should be joined in a suit when the validity of its ordinances are at issue?

(4)    Whether an ordinance that is intentionally drafted to be vague for the purpose of arbitrary application is void?

(5)    Whether an ordinance that is intentionally drafted to be vague for the purpose of arbitrary application is constitutional?

(6)    Whether an adjacent landowner, whose property is injured by a municipality's action, has standing to complain?

(7)    Whether a municipality is subject to suit for engaging in contract zoning?

(8)    Whether a finding of imminent and actual harm establishes ripeness?

(9)    Whether a litigant should be given an opportunity to re-plead and develop jurisdictional facts when faced with an inadequately noticed plea to the jurisdiction?

# STATEMENT OF FACTS

The Shavano Park Code of Ordinances is at the center of a dispute between Ard Mor, the owner and operator of Luv-N-Care Child Development Centers, and Lockhill Ventures LLC, a developer who intends to build a gas station and gas storage tanks next to the child development facility. CR.I:1. The property on which Lockhill plans to build a gas station is subject to a Declaration of Protective Covenants, which was entered into for the express purpose of preventing the development of the disputed property in a manner "incompatible with any adjoining commercial properties." CR.I:103. Relevant to this appeal, the covenants tie the permitted uses of the disputed property to applicable zoning and governmental regulations. CR.I:106.[1] Specifically, the covenants limit development of the disputed property to uses permitted by Shavano's B-2 zoning classification. CR.I:110.

## I. Shavano Intentionally Excluded Gas Stations from its B-2 Zoning Classifications.

---

[1] In addition to prohibiting the use of the property in violation of existing zoning laws or governmental regulations, the covenants also prohibit a list of uses such as any use which is offensive from the discharge of fumes and any use that involves the "[s]torage, handling or use of explosive material." RR.II:70. Although this brief focuses on those aspects of the covenant concerning zoning laws and governmental regulations, the trial court also granted injunctive relief based on its findings that gasoline vapors are explosive and would be used or handled on the property according to Lockhill's plans in violation of the protective covenants.CR.II:141-142.

A gas filling station is not listed within Shavano's B-2 zoning classifications. CR.I:13-20. Nonetheless, Shavano believes that allowing Lockhill to proceed with development against the Declaration of Protective Covenants and Shavano's ordinances will generate revenue for Shavano. CR.I:26l; RR.II:21; RR.III:91. Consequently, Shavano entered into a Development Agreement with Lockhill that contracts for development of a gas station on the disputed property. RR.2:23.

Shavano does not suggest that "gas filling stations" are listed in the B-2 zoning table applicable to the disputed property. Instead, Shavano has taken the position that the term "gas filling station" is synonymous with the phrase "convenience store." RR.II:48. A convenience store is permitted under B-2 zoning, with special approval. RR.II:49, 51. The phrase "gas filling station" is found in other places in Shavano's municipal code, but not within Table No. 4 showing the permissible uses under B-2 zoning. CR.I:13-20. When asked why the phrase "gas filling station" does not appear if it is intended to be included in the list of permissible B-2 uses, Shavano's City Manager, William Hill, disclosed: "as it's currently written it's ambiguous on purpose." RR.II:137.

## II. Shavano Entered into a Contract with Lockhill Which Purports to Grant Lockhill the Unfettered Right to Build a Gas Station.

The operators of the Luv-N-Care child development facility believe that it is unsafe and incompatible to have a gas station and storage tanks operating on the front steps of the day care facility. Supp. RR.II:41. Parents of the children at the day care facility also expressed concern about the dangers of constructing a gas station in close proximity to a day care facility. Supp. RR.II:55-58. Sean Nooner, the President of Lockhill, was aware of the land restrictions in the covenants and the opposition to the development, but took the position that he could do anything he wanted with the disputed property once he purchased it. RR.III:12.

Like Mr. Nooner, Shavano was aware of the objections to the project, and was also put on notice that the placement of a gas station on the disputed property would violate deed restrictions in the covenants. RR.II:25-27, 29. Despite the restrictions on the disputed property, Shavano went to great lengths to assist Lockhill in circumventing zoning prohibitions and deed restrictions. RR.II:35-37, 45. In the Development Agreement, Shavano promises to provide the disputed property with a zoning designation that gives Lockhill the right to build a gas station. CR.I:38; RR.IV:32-33. Alternatively, the Development Agreement provides that Lockhill would retain the right to build a gas station even if Shavano failed to provide the appropriate zoning designation, based on certain exceptions contained in the Local Government Code. CR.I:38; RR.II:84. However, Nooner testified that he had not

3

begun construction or use of the property in such a manner to invoke the exceptions provided for in the agreement. RR.III:34-36. Nonetheless, Mr. Nooner testified that the Development Agreement gives him the absolute right to build a gas station on the disputed property. RR.III:32, 35.

### III. Ard Mor Sought a Declaration That Gas Stations Are Not Permitted on Lockhill's Property on Five Different Grounds.

Ard Mor sought injunctive relief to halt development and enforce the restrictions on the disputed property. CR.I:1. In its pleadings, Ard Mor requested a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, seeking a declaration that the use of the disputed property as a gas filling station does not comply with the covenants or Shavano's ordinances. CR.I:212. Ard Mor also sought declarations that (i) Shavano's ordinances are void due to their admitted ambiguity; (ii) the Development Agreement and the ordinance annexing the disputed property are void contract zoning; (iii) the Development Agreement violates existing ordinances; (iv) Shavano inconsistently applies its ordinances in violation of equal protection; and (v) the actions of Shavano in contracting with Lockhill and passing the ordinance approving the agreement were *ultra vires*. CR.II:5-6.

### IV. Shavano Testified That it Would Interpret its Ordinance to Include Lockhill's Proposed Gas Station, and That it Drafted its Ordinances to Be "Ambiguous on Purpose."

4

On July 9, 2014, the trial court granted a temporary restraining order against Lockhill prohibiting the commencement or continuation of development or construction on the disputed property. CR.I:91. Even after the court issued the temporary restraining order halting the development, Shavano moved forward with approving the Development Agreement and annexation of the disputed property. CR.I:22; RR.II:45. A hearing on the temporary injunction was set for July 23, 2014. CR.I:91. On the day that the request for a temporary injunction was set for hearing, Shavano filed a plea to the jurisdiction, but did not set a hearing. CR.I:145.

The trial court heard testimony and considered evidence on the temporary injunction over a four day period. Supp. RR.II:1; Supp. RR.III:1; Supp. RR.IV:1; Supp. RR.V:1. When questioned about whether or not the Development Agreement complied with Shavano's Code, Shavano's City Manager responded:

Q.   Well, did this contract then comply with Section 36-40 of the City of Shavano Park code?

A.   I think that's irrelevant. I don't think that it was ever intended to comply. All it said is we're approving this plan as presented to us and that requirements for PUD are extended. It didn't approve a PUD, it didn't create a PUD. That zoning action has to occur later.

Q.   Okay. Maybe I'm misreading it. It says, the parties agree that the requirements of Section 36-40 of the City of Shavano Park Code of ordinances are extended to the development of the property, correct?

A.   That's the way it reads.

5

RR.II:111-12.

Q.    How can you then argue on the one hand that they can do it because the zoning allows for it to be done; on the other hand, it's saying that they did not yet take that action of zoning the property?

*****

Q.    – if it's zoned B-2 – or B-1 for that matter — that in and of itself for that matter would not allow a gas station's operation, would it?

A.    It would allow a gas station.

Q.    It would allow a gas station operation without seeking second City Council approval?

A.    it's an authorized use under B-2. Yes, particular – so it's an authorized use under B-2. And to actually approve the plan will require separate City Council approval.

RR.II:122-23.

Q.    So it's your testimony that City Council does not have the authority to say no to a gas station in B-2 at Shavano Park?

A.    I don't know the answer to that question.

RR.II:126.

Q.    Had the City Council desired to clarify their intent with respect to putting gas stations in B-2, couldn't they have done so in 2013 when they last amended their schedule of uses?

A.    They could have.

Q.    But they did not, correct?

6

A. They did not--well, we don't know that they desired to. They didn't take any action.

Q. It's currently ambiguous?

A. It was--as it's currently written it's ambiguous on purpose.

RR.II:136-37.

On the third day of the injunction hearing, Shavano asked the trial court to consider its plea to the jurisdiction although the plea had not been set for hearing. RR.III:127. The court declined, advising that the only issue before it was the temporary injunction. RR.III:128-29. The court observed that Shavano was not enjoined in the temporary restraining order, and, therefore, was not before the court. RR.III:128-29.

## V. The Trial Court Found That Gas Stations Are Not Permitted by Shavano's Ordinances and That Injunctive Relief Is Necessary to Prevent Harm to Ard Mor.

On the last day of the hearing, Shavano again requested that the court take up and consider its plea to the jurisdiction. Supp. RR.V:90-91. After hearing argument, the trial court entered an order denying Shavano's plea to the jurisdiction. CR.II:137. The court also issued an Order for Temporary Injunction. CR.II:141. In its order, the trial court found that the proposed development of a gas station on the disputed property is prohibited by applicable zoning laws or other governmental regulations.

CR.II:142. The trial court also found that without further action by Shavano's Planning and Zoning Commission and Shavano's City Council, the planned development would violate Shavano's zoning ordinances, which would further violate the covenants. CR.II:142. Additionally, the trial court found that gasoline vapors are explosive and would be stored or handled on the property as currently planned by Lockhill in violation of the restrictive covenants. CR.II:142. Lockhill was, therefore, ordered to cease and desist from commencing or continuing the development of the disputed property, including seeking or applying for approval from Shavano or any other governmental authority to use the disputed property to store or sell gasoline in violation of the restrictive covenants. CR.II:143.

## SUMMARY OF THE ARGUMENT

Shavano has testified that it drafted its ordinances to be intentionally ambiguous so that they can be applied, as desired by Shavano, on a case-by-case basis. Now Shavano argues that its ordinances can be interpreted in its absence. However, if Shavano is not a party to these proceedings, Shavano will not be bound by the trial court's clarification of Shavano's ordinances, and future parties, including Ard Mor, will be subject to uncertainty and inconsistency.

Because the interpretation of Shavano's ordinances is central to the parties' dispute, Ard Mor argued, and the court agreed, that Shavano was a necessary party,

8

and that Shavano waived its immunity pursuant to section 37.006(a) of the Texas Civil Practice & Remedies Code. Shavano has not brought forward any argument or authorities that suggest that its immunity from suit is not waived by section 37.006(a) of the Texas Civil Practice & Remedies Code. Therefore, even if Shavano's arguments are correct on all other grounds, the trial court's ruling should be affirmed because it is based on a ground not challenged by Shavano.

Shavano's admission that its ordinances are ambiguous also waives immunity from suit pursuant to section 37.006(b) of the Texas Civil Practice & Remedies Code. A challenge that an ordinance is impermissibly vague is a direct attack regarding the constitutionality of the ordinance, for which immunity is waived. Ard Mor's arguments that Shavano's ordinances are vague and subject to arbitrary application trigger the waiver of Shavano's claimed immunity from suit pursuant to section 37.006(b) of the Texas Civil Practice & Remedies Code.

Ard Mor's challenges to the Development Agreement and annexation ordinance also provide the Court jurisdiction over Shavano. Ard Mor is not challenging Shavano's actions on procedural grounds for which Ard Mor lacks standing. Instead, Ard Mor is alleging that the Development Agreement constitutes contract zoning, which renders the Development Agreement and annexation ordinance wholly void. Indeed, Shavano's actions are nothing more than a thinly

veiled attempt to circumvent its own ordinances through private contract. As an adjacent landowner who has established particularized harm to its property, Ard Mor has standing to challenge Shavano's actions.

Shavano's challenge to the ripeness of this matter also lacks merit. Ripeness does not require a finding that the harm has already occurred. All that ripeness requires is a showing that the alleged harm is tangible and likely. The trial court found both that the development was planned "as soon as possible" and that Ard Mor would be "negatively effected" by such actions. This matter is not only ripe, but so imminent that Ard Mor was granted injunctive relief.

Finally, in the event that Shavano's arguments have any merit, the proper remedy to Shavano's plea is remand. Shavano interjected its plea into the closing arguments of a hearing regarding Ard Mor's request for injunctive relief against Lockhill. The trial court made clear over several days that the issue of Shavano's plea, which was not set for hearing, was not before it. Yet, Shavano now challenges the sufficiency of Ard Mor's pleadings and evidence. To the extent that the Court's jurisdiction over Shavano is called into question, Ard Mor should be given the chance to establish jurisdiction after being informed of the defect and provided an opportunity to cure.

## ARGUMENT AND AUTHORITIES

### I.    Standard of Review.

#### A.    Pleadings.

In reviewing a plea to the jurisdiction, the ultimate merits of the parties' controversy are not before the reviewing court. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (plea to the jurisdiction) ("The plea should be decided without delving into the merits of the case."). Instead, an analysis of jurisdiction focuses on the plaintiff's live pleadings. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that a court reviews de novo. *Id.* In doing so, the reviewing court must construe the pleadings liberally and look to the pleader's intent. *Id.* If the plaintiff's pleadings are insufficient to demonstrate jurisdiction, but do not show incurable defects in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissal. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.).

11

**B.      Facts.**

The truth of the jurisdictional facts alleged in the pleadings are to be assumed unless the defendant presents evidence to negate their existence. *Miranda*, 133 S.W.3d at 227 (citing *Blue*, 34 S.W.3d at 555). To the extent the plea implicates the merits of the plaintiff's cause of action, the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, the same burden a movant must meet to prevail on a traditional summary judgment motion. *Miranda*, 133 S.W.3d at 227-28. Whether the party meets this burden is a question of law that is reviewed de novo. *Id.* at 228. In making this determination, a reviewing court must take as true all evidence favorable to the pleader and indulge every reasonable inference and resolve any doubts in the pleader's favor. *Id.* If that evidence creates a fact issue, then it remains for the fact finder to decide. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *also see Blue*, 34 S.W.3d at 555.

**II.      Shavano's Issues Do Not Address All Possible Grounds Supporting the Trial Court's Order**.

In Plaintiff's Second Amended Original Petition, Ard Mor seeks at least six different declarations relating to Shavano's actions. CR.II:5-6. Any of the grounds for declaratory relief, standing alone, invoke the trial court's jurisdiction over

Shavano. The trial court denied Shavano's plea to the jurisdiction without stating which of Ard Mor's claims for declaratory relief invoked the court's jurisdiction over Shavano. CR.II:137.

When "the trial court denie[s] the plea [to the jurisdiction] without stating any ground for doing so, if the trial court's order is correct on any basis, [the appellate court] will not reverse." *Dallas Indep. Sch. Dist. v. Lee*, No. 05-01-00359-CV, 2002 WL 109626, at \*2 (Tex. App.—Dallas Jan. 29, 2002, no pet.) (not designated for publication). Shavano wholly fails to address two of Ard Mor's jurisdictional grounds. Namely, Shavano fails to address the fact that the court could have found that (1) Shavano is a proper, if not mandatory, party under the DJA because the construction of its ordinances are at issue (RR.IV:46-48); and (2) Shavano is a proper, if not mandatory, party under the DJA because Ard Mor challenges the validity of Shavano's ordinances (RR.IV:46-48).

Instead of addressing the jurisdictional grounds argued by Ard Mor, Shavano expends considerable space asserting that a private party cannot challenge an annexation ordinance. *See* Appellant's Brief at 11. The title of that argument appears as follows:

> "C. Appellee's Declaratory Judgment Action To Invalidate an Annexation <u>Agreement</u> Fails Because Only a *Quo Warranto* Proceeding May Challenge An Annexation <u>Ordinance.</u>"

*See* Appellant's Brief at 11 (emphasis added). At the outset, it is apparent that Shavano is using the terms Agreement and Ordinance interchangeably, although a private agreement and an enacted ordinance differ greatly in their meaning and effect.

Moreover, Shavano's arguments, even as to annexation, miss the crux of Ard Mor's request for declaratory relief. Ard Mor is not challenging Shavano's right to annex property. Ard Mor is challenging Shavano's right to annex property through an invalid agreement that contains a guaranteed right to develop property in violation of existing zoning laws which constitutes constitutionally prohibited contract zoning. CR.II:5-6. Ard Mor is not challenging Shavano's right to include gas filling stations within its B-2 zoning classifications. It is undisputed that Shavano could have amended its ordinance to include gas stations within B-2 zoning. What Ard Mor is challenging is the fact that Shavano intentionally excluded "gas filling stations" from all of its zoning districts, while simultaneously contracting for the development of a gas station. RR.IV:46-48; CR.II:39. Ard Mor is also challenging the fact that Shavano has intentionally drafted its ordinances in a vague and ambiguous manner so that Shavano can interpret and apply the ordinances on a case-by-case basis without consistency or limitations. RR.IV:46-48.

Ard Mor does not believe that Shavano's legal arguments are correct statements of law. However, to the extent that Shavano makes correct statements of law, those statements are not responsive to the issues before the Court. Shavano has attempted to reframe the issues before the Court to fit within a body of law that is favorable to Shavano. However, the plea to the jurisdiction must be measured against the pleadings and evidence before the Court, not against hypothetical claims that would defeat jurisdiction. By excessively re-framing the issues, Shavano has failed to address the basis of the trial court's ruling.

## III. Because the Trial Court and City Manager Disagree on the Meaning of an Ordinance, Shavano Will Be Affected by the Declaratory Relief Sought by Ard Mor.

Ard Mor is seeking declaratory judgments that construe the meaning of Shavano's zoning ordinances. *See* Plaintiff's Second Amended Original Petition (CR.II:5-6) ("[P]laintiff asks the court to declare that . . . [u]se of the premises as a gasoline station will involve business activities, except for outside dining, that are not completely contained within an enclosed structure or court in violation of City of Shavano Ordinance 36-39(6) and (7) . . . [and] [u]se of the property as a gas station is not a permitted use under any zoning category in the City of Shavano Park."). During the temporary injunction hearing, Shavano's City Manager testified that a gas filling station is a permitted use under the B-2 zoning classification. RR.II:123. In

15

contrast, the trial court ruled that "the planned development includes uses that violate the zoning ordinances of the City of Shavano Park." CR.III:142. Therefore, there is a significant likelihood that, upon trial, the Court will ascribe a meaning to Shavano's ordinances in a manner that conflicts with Shavano's own interpretation and application of its ordinances.

The Declaratory Judgments Act grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration of those rights under the statute and requires that all relevant parties be joined in any declaratory judgment suit. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a) & 37.006(a) (West 2008) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding."); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010). A declaratory judgment action against the government seeking a declaration of a party's rights and status under a statute is not barred by governmental immunity. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 859–60 (Tex. 2002); *City of La Porte v. Barfield*, 898 S.W.2d 288, 297 (Tex. 1995), *superseded by statute on other grounds*, Tex. Labor Code Ann. § 451.001 (West 1993), *as recognized in Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54 (Tex. 2011). The DJA allows courts

16

to declare relief—i.e., construe statutes—whether or not further relief is or could be claimed. *Tex. Lottery Comm'n*, 325 S.W.3d at 635.

The Supreme Court of Texas has concluded that when determining which parties, if any, must be joined under section 37.006(a), the legal standard from Texas Rule of Civil Procedure 39 should be utilized. *See* Tex. R. Civ. P. 39; *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004). Under this rule, entitled "Joinder of Persons Needed for Just Adjudication:"

> A person who is subject to service of process shall be joined as a party in the action if . . . he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Tex. R. Civ. P. 39(a); *see Epernay Cmty. Ass'n, Inc. v. Shaar*, 349 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A.    **Shavano is a proper, if not mandatory party pursuant to section 37.006(a).**

Shavano argues that the court can interpret its ordinances without it being joined. However, section 37.006(a) of the Texas Civil Practice & Remedies Code specifically provides that all interested parties **must** be included and that a declaration does not prejudice the rights of a person not a party to the proceeding. Given

17

Shavano's own interpretation of its ordinances, the failure to join Shavano could result in inconsistent application of the ordinances in future proceedings. For that reason, Shavano is properly joined in this action. *See Tex. Lottery Comm'n*, 325 S.W.3d at 634 (noting that because the DJA permits statutory challenges and governmental entities may be bound by those challenges, the Act contemplates that the entities must be joined in those suits); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 445–46 (Tex. 1994) (same).

Although section 37.006(b) of the Texas Civil Practice & Remedies Code specifically mentions municipal corporations, that is not the only section of the DJA that makes a municipal corporation a proper party to a suit for a declaratory judgment. For example, in *City of Crowley v. Ray*, the plaintiff sued a third party and made the City of Crowley a party for the purpose of obtaining a declaratory judgment regarding a certain action of the City. *City of Crowley v. Ray*, No. 2-09-290-CV, 2010 WL 1006278, at *1 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.). In that case, the court noted that declaratory relief "will remove several uncertainties regarding the flood plain criteria documents that are central to the [plaintiff's] suit against [the third party]." *Id.* at *7. Likewise, construction of Shavano's ordinances will remove uncertainties central to Ard Mor's property rights and claims against Lockhill. Since Shavano has an interest in the construction of its ordinances, Shavano must be made

18

a party to the declaratory action pursuant to section 37.006(a) of the Texas Civil Practice & Remedies Code.

**B.      Shavano does not challenge that it is a proper party under section 37.006(a).**

Where, as here, the trial court does not state the grounds upon which it grants a plea to the jurisdiction, an appellant must attack each asserted ground that could support the adverse ruling. *See Southwestern Bell Telephone, L.P. v. Harris County*, 267 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Otherwise, a reviewing court must presume that any assigned error would be harmless in light of the unchallenged alternative justifications for the ruling. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681-82 (Tex. App.—Houston [1st Dist.] 2002, no pet.). On appeal, Shavano challenges the trial court's denial of its plea pursuant to section 37.006(b) of the Texas Civil Practice & Remedies Code. Shavano does not challenge the trial court's denial of its plea pursuant to section 37.006(a) of the Texas Civil Practice & Remedies Code. A reviewing court cannot alter even an erroneous ruling if the appellant does not assign error to it. *Britton*, 95 S.W.3d at 681; *see also, e.g., In re K.G.S.*, No. 14–12–00673–CV, 2014 WL 801127, at *5 (Tex. App.—Houston [14th Dist.] Feb. 27, 2014, no pet.) (mem. op.). For this reason alone, the ruling of the trial court should stand.

**IV.** **Shavano's Admission That its Ordinance Is Ambiguous as Written Provides Grounds to Invalidate the Ordinance.**

Without waiving the forgoing, Shavano is a proper party pursuant to section 37.006(b) of the Texas Civil Practice & Remedies Code. When a private party challenges a municipality's ordinances as invalid, "the municipality must be made a party and is entitled to be heard." Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 1985). As such, the party has standing and obtains a statutory waiver of the municipality's governmental immunity. One manner by which a private party can challenge the validity of an ordinance is to claim that the ordinance is impermissibly vague and, therefore, unconstitutional. *See Noell v. City of Carrollton*, 431 S.W.3d 682, 698-99 (Tex. App.—Dallas 2014, pet. denied). When a private party challenges an ordinance as being ambiguous, "[t]he same rules apply to the construction of a municipal ordinance as apply to the construction of statutes." *Id.* at 698. The test is whether "the persons regulated by it are exposed to risk or detriment without fair warning or if it invites arbitrary and discriminatory enforcement by its lack of guidance to those charged with its enforcement." *Id.* at 699.

Texas courts have followed the "man of common intelligence" test espoused by the Supreme Court of the United States to determine if a statute or ordinance passes constitutional muster. "A law forbidding or requiring conduct in terms so

20

vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process." *City of Mesquite v. Aladdin's Castle, Inc.*, 559 S.W.2d 92, 94 (Tex. Civ. App.—Dallas 1977) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 373 (1964)), *writ ref'd n.r.e*, 570 S.W.2d 377 (Tex. 1978). If an ordinance is susceptible to discriminatory application, the fact that "it will not construe the ordinance in an unconstitutional manner . . . is irrelevant to the constitutional issue of its susceptibility to such a construction." *City of Mesquite*, 559 S.W.2d at 94.

Shavano's zoning ordinances are drafted as prohibitions that reference an enumeration of permitted uses for each zoning district. CR.II:15. For example, "only the uses specified on Table No. 4 are permitted in the B-1 Business District." CR.II:15. As such, interpretation of Table No. 4 is necessary for a private party to determine what uses of property are permitted and prohibited in B-1 zoning. Since B-2 zoning includes all permitted uses under B-1 zoning (CR.II:20), Table No. 4 is also relevant for determining the permitted and prohibited uses in B-2 zoning. One of the enumerated permitted uses in Table No. 4 is "[c]onveniece store (CC)." CR.II:19. Ard Mor reads convenience store to allow a convenience store, but not a gas station. On the other hand, City Manager Hill stated that "[t]he area in which a convenience store is authorized in B-2 includes gas sales." RR.II:48. When

21

questioned as to the support for his interpretation, City Manager Hill responded that it was common knowledge. RR.II:48. If "men of common intelligence must necessarily guess at its meaning and differ as to its application" then the ordinance is unconstitutional. *City of Mesquite*, 559 S.W.2d at 94 (quoting *Baggett*, 377 U.S. at 373). This is exactly what City Manager Hill admitted to when he later testified that Table No. 4 is written ambiguous on purpose. RR.II:137.

Not only is the phrase "convenience store" in Shavano's Table No. 4 ambiguous, it was drafted to be ambiguous "on purpose" for Shavano's benefit. RR.II:136, 137. Far from a city urging that it will not construe an ordinance in an unconstitutional manner, Shavano asserts that it intentionally drafted a vague statute to provide Shavano with the discretion to apply the ordinance at its whim. RR.II:125, 130, 131, 136, 137. When a city uses an ambiguous phrase in an economic ordinance, it "invites arbitrary and discriminatory application" and is "unconstitutionally vague . . . regardless of who is making that determination." *Lindig v. City of Johnson City*, No. 03-11-00660-CV, 2012 WL 5834855, at *5 (Tex. App.—Austin Nov. 14, 2012, no pet.) (mem. op.). Since Ard Mor challenges Shavano's Table No. 4 as being void for vagueness, Ard Mor challenges Shavano's ordinances as being invalid. Under section 37.006(b) of the Texas Civil Practice & Remedies Code, Ard Mor has standing and has obtained waiver of Shavano's governmental immunity.

22

**V.** **Shavano's Development Agreement and Annexation Ordinance Are Void Contract Zoning Because They Provide Lockhill a Contractual Right to Develop the Disputed Property in a Manner Inconsistent with Shavano's Current Ordinances.**

The majority of Shavano's appeal and briefing is directed at the issue of whether or not Ard Mor had standing to challenge the annexation ordinance and the Development Agreement. For a private party to have standing to challenge a city's annexation, the party must (i) allege that the annexation is void, rather than voidable, and (ii) allege that the party suffers a special or peculiar burden as a result of the annexation. *City of Port Isabel v. Pinnell*, 161 S.W.3d 233, 238 (Tex. App.—Corpus Christi 2005, no pet.). For a private party to have standing to challenge a city's development agreement under the DJA, the party "must show a particularized, legally protected interest that is actually or imminently affected by the alleged harm." *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2010, pet. denied). When reviewing a plea to the jurisdiction, an appellate court's review concerns the nature of the challenge to annexation, not whether that challenge has merit. *Id.* In determining the nature of the challenge, the court must take the property owners' allegations as true and construe them in their favor. *City of San Antonio v. Summerglen Prop. Owners Ass'n Inc.*, 185 S.W.3d 74, 83 (Tex. App.—San Antonio 2005, pet. denied).

**A.** **An allegation that an annexation ordinance constitutes contract zoning is an allegation that the annexation ordinance is void.**

A private party can challenge an annexation ordinance when it alleges that an "annexation is wholly void." *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex. 1991). An annexation is wholly void when the annexation is outside of the city's legal authority to annex. *See City of San Antonio*, 185 S.W.3d at 83. Contrary to Shavano's characterization of law, the fact that an annexation does not exceed legal authority in one of the four manners cited by *Alexander* does not preclude the possibility that the annexation exceeds legal authority in another manner. *See Cokins v. City of Lakeway*, No. 03-12-00083-CV, 2013 WL 4007522, at *1 (Tex. App.—Austin July 25, 2013, no pet.) ("The City does not dispute that if it failed to annex the NBHR Area within 90 days of initiating annexation procedures then the annexation is void.").

Ard Mor challenged the annexation ordinance as being wholly void because it was the result of illegal contract zoning. Not one of Shavano's zoning districts allow for the construction or operation of a gas station. CR.II:13-21. Shavano's City Council Agenda Form clearly noted that Lockhill's "development concept included a 'C' Store with gas pumps." CR.II:25. Furthermore, Shavano describes "[t]he

24

Development of the Property as . . . (i) a convenience store with gasoline sales . . ."

CR.II:38.

Shavano attempted to contract around the conflict between its zoning ordinances and development plans in section 4.06 of the Development Agreement. That section states that "[t]he proposed zoning for the Property <u>shall be such zoning designation</u> that will allow for the development of the Property in accordance with the Terms of this Agreement." CR.II:39 (emphasis added). Yet, no such zoning designation currently exists. Then, as if to say, "regardless of its contents, this contract is not illegal" the Development Agreement provides that "the City Council may not contractually obligate itself to approve a future zoning designation." CR.II:39. However, in direct violation of the prior promise of legality, the Development Agreement continues:

> In the event City Council action places the Property in a zoning district or classification that prohibits the uses proposed by this Agreement, the Parties agree that the Owner at its election may 1) terminate this agreement or 2) pursuant to Texas Local Government Code Section 43.002 and to the extent reasonably necessary, retain the right to develop and use the Property for the purposes authorized under this Agreement.

CR.II:39. However, Nooner testified he had not yet undertaken any actions regarding development that would invoke the application of Section 43.002. RR.III:34-36. Specifically, Nooner testified that he had not received any permits from any

governmental authorities for building improvements on the disputed property. RR.III:34-36.

Therefore, regardless of its internal assertions of legality, it is clear that the Development Agreement contractually obligates Shavano to (i) provide Lockhill with a zoning district that allows for a gas station, even though no such zoning district currently exists; and (ii) allow Lockhill to develop the property for purposes prohibited by Shavano's current zoning ordinances. As such, Shavano's annexation ordinance and Development Agreement constitute unlawful contract zoning. *See 2800 La Frontera No. 1A Ltd. v. City of Round Rock*, No. 03-08-00790-CV, 2010 WL 143418, at *2 (Tex. App.—Austin Jan. 12, 2010, no pet.) (mem. op.) ("Zoning decisions must occur via the legislative process and not by 'special arrangement' with a property owner."). Indeed, Nooner, a party to the contract, testified that the agreement gives him an absolute right to build a gas station on the property. RR.III:32, 35. Since contract zoning is beyond Shavano's legal authority to annex, the annexation is wholly void and may be challenged by a private party. *See Super Wash, Inc. v. City of White Settlement*, 131 S.W.3d 249, 257 (Tex. App.—Fort Worth 2004, pet. granted) ("[C]ontract zoning is invalid because the city surrenders its authority to determine proper land use and bypasses the entire legislative process."), *rev'd in part*, 198 S.W.3d 770 (reversed on other grounds).

**B. The trial court's finding that Ard Mor's operations will be interrupted and the property value will be negatively affected establishes that Ard Mor is suffering a particularized injury as a result of Shavano's actions.**

Shavano alleges that because Ard Mor is not a party to the Development Agreement, it has not suffered a particularized injury, and, therefore, cannot challenge the agreement. Shavano illustrates this position through a simple chart found on page 4 of Appellant's Brief that depicts a straight line running exclusively between Lockhill Ventures and the City of Shavano Park. Using Shavano's simplified logic, a city could use a private agreement to circumvent any public ordinance. Indeed, that is precisely what Shavano is attempting to do in this case — hold some landowners to an ordinance, while excusing others when it is financially beneficial to Shavano.

Shavano's actions are not occurring in a vacuum. As the trial court found, the actions of Shavano (if left unchecked) will have significant, damaging, and irreparable effects on adjacent landowners such as Ard Mor. Indeed, a more accurate chart reflecting the relationship of the parties is demonstrated as follows:



As indicated in the chart, the Development Agreement and annexation are in direct conflict with both the Declaration of Protective Covenants and Shavano's own zoning ordinances. Shavano cannot, by agreement with Lockhill, insulate itself from responsibility for the damage it is causing to Ard Mor.

Although Shavano may desire that its agreements lay beyond examination by affected property owners, such is not the law in the State of Texas. Real property owners adjacent, or in close proximity, to land being developed have standing to complain of a city's actions if the landowner demonstrates a particularized risk of injury. *City of Laredo v. Rio Grande H20 Guardian*, No. 04-10-00872-CV, 2011 WL

3122205, *5 (Tex. App.—San Antonio July 27, 2011, no pet.) (landowners who "own[ed] real property within 200 feet of the re-zoned areas" had standing).

Shavano cites to *Save Our Springs* to argue that Ard Mor lacks jurisdiction because it "has no injury traceable to the Development Agreement." *See Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied). However, *Save Our Springs* does not support Shavano's argument. In *Save Our Springs*, the court recognized that a landowner has standing to challenge a city's land regulation if the landowner "sufficiently distinguishes his interest from that of the public at large." *Save Our Springs*, 304 S.W.3d at 879 (quoting *Texas Rivers Protection Ass'n v. Texas Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 151 (Tex. App.—Austin 1995, writ denied)). Indeed, this Court has previously rejected a city's reliance on *Save Our Springs* when the challenger demonstrated that "[u]nlike the individual members in *Save Our Springs*, the allegations in this case are that individual members own property in the affected areas, giving them a 'concrete and particularized' risk of injury different from that of the general public." *City of Laredo*, 2011 WL 3122205 at *5.

Ard Mor has concrete and particularized risks of injury different from that of the general public, as demonstrated by the trial court's finding that Lockhill's

29

development "will be disruptive to the operations of the Luv n Care Development Center, and [Ard Mor's] property value may be negatively effected." CR.II:143. Like the landowners in both *Texas Rivers* and *City of Laredo*, Ard Mor's daycare is adjacent to property that is the subject of Shavano's Development Agreement and annexation. Furthermore, the Development Agreement and annexation directly affect the covenants that burden the disputed property and benefit Ard Mor. Lockhill's property interest in the disputed property is subject to the covenants, which existed prior to Lockhill's property interest and run with the land. CR.II:67-79.

**C.    Challenges to annexation are not limited to *quo warranto* proceedings.**

Shavano argues that Ard Mor cannot challenge the annexation <u>agreement</u> because an annexation <u>ordinance</u> can only be challenged through a *quo warranto* proceeding. However, the City does not argue that an ordinance and an agreement are the same thing. Indeed, they are not. Although both the Development Agreement and annexation ordinance operate together to effectuate the annexation, they are not interchangeable. Shavano has not cited to any case that holds that a development agreement can only be challenged through a *quo warranto* proceeding. Nor has Shavano cited to any case that holds that a plaintiff must be a party to an annexation ordinance to have standing to challenge its effects.

However, even if the Development Agreement is to be treated the same as the annexation ordinance, Shavano's own authority confirms that a *quo warranto* proceeding is not the only way to challenge an annexation. *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex. 1991) (holding that a *quo warranto* proceeding is not necessary to challenge an annexation when the "annexation is wholly void"). If an annexation is "void because the city has no authority to annex, a collateral attack by private parties is permissible" and the challenge does not need to be brought under a *quo warranto* proceeding. *City of Port Isabel v. Pinnell*, 161 S.W.3d 233, 238 (Tex. App.—Corpus Christi 2005, no pet.). Because Ard Mor is challenging the validity of both the annexation ordinance and the Development Agreement, Shavano's authority is inapplicable to the facts of this case.

## VI.   The Ripeness of the Matter Before the Court Was Established When the Court Found That Ard Mor Was Entitled to Injunctive Relief.

Shavano challenges Ard Mor's standing to seek declaratory relief regarding the Development Agreement and to bring an equal protection claim based on the assertion that Shavano may ultimately decide not to do those acts that are currently being stayed due to the grant of injunctive relief. Appellant's Brief at 10, 13. Restated, Shavano has taken the position that to be ripe, the harm that is at the center of a controversy must be a past harm or a harm that has already occurred, and not a

31

harm that is real and threatened. However, ripeness only requires that "an injury has occurred or is likely to occur, rather than being contingent or remote." *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000)). By definition, ripeness does not require a showing of a past harm. *See City of Laredo v. Rio Grande H20 Guardian*, No. 04-10-00827-CV, 2011 WL 3122205, *4 (Tex. App.—San Antonio July 27, 2011, no pet.) ("Although we agree that from the record it does not appear that manufacturing has begun or that any of the risks asserted by Rio Grande have come to fruition, the record does establish the City's intention to allow light manufacturing in the rezoned areas (or else, why rezone at all?).").

The trial court has already determined that the development is planned to occur, "as soon as possible and before the Court can render judgment in this cause." CR.II:141. The court also found that, in the absence of court intervention, Ard Mor will be "negatively effected." CR.II:143. This finding of an imminent harm establishes ripeness.

Shavano's legal support for this ripeness challenge is an inapposite case dealing with mootness. In *City of Richardson*, the city amended its charter during the course of litigation, thereby making the plaintiff's declaratory judgment action moot. *See City of Richardson v. Gordon*, 316 S.W.3d 758, 762 (Tex. App.—Dallas 2010,

no pet.) Shavano's argument that the matter is not justiciable because the zoning ordinances have not been passed yet is an issue of ripeness and not mootness.

Furthermore, Shavano's ripeness argument mischaracterizes Ard Mor's claims as dependent on future zoning actions by Shavano. The injury to Ard Mor and the illegality of the Development Agreement and the annexation do not depend on which zoning district Shavano assigns to the disputed property. Rather, the injury to Ard Mor has already occurred because section 4.06 obligates Shavano to allow Lockhill to develop a gas station no matter which zoning district Shavano assigns to the disputed property. CR.II:39.

As City Manager Hill makes clear, the Development Agreement gives Lockhill the authority to develop a gas station regardless of the zoning district Shavano assigns to the disputed property. When asked about permanent zoning for the disputed property, Hill testified that Shavano could wait to decide which zoning district to assign the disputed property until after the gas station is built. RR.II:17-18. Sean Nooner corroborated this interpretation of the Development Agreement when he testified regarding the need for zoning that, "I do not believe it has to happen prior to construction." RR.II:34. If Lockhill can build the gas station before Shavano assigns the disputed property a zoning district, then Ard Mor's injury is not dependent on any future zoning actions by Shavano. As such, Ard Mor's harm does

33

not depend on "contingent or hypothetical facts, or upon events that have not yet come to pass." *Robinson*, 353 S.W.3d at 755-56 (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000)). Therefore, the matter before the Court is ripe and justiciable.

## VII.  If Shavano's Plea Has Merit, this Matter Should Be Remanded.

As part of its plea, Shavano challenges both Ard Mor's pleading and the proof offered by Ard Mor to establish jurisdiction. *See, e.g.,* Appellant's Brief at 13 ("no pleading or proof demonstrates a classification or distinction . . . evidence demonstrates, no zoning action occurred . . . proper pleading of *ultra vires* requires a suit against the City's officials in their official capacity"); Appellant's Brief at 15 ("the claim requires Appellees to plead facts that actions were prohibited"). Ard Mor denies that Shavano's arguments have merit. However, in the event that this Court determines that Shavano's objections to Ard Mor's pleadings have merit, or that Ard Mor has failed to present sufficient facts to establish jurisdiction, the proper remedy is that of remand, not reversal.

When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (holding that

34

a plaintiff facing a plea to the jurisdiction in an appellate court deserves the opportunity to amend its pleadings on remand if its pleadings can be cured); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Scott v. Alphonso Crutch LSC Charter School, Inc.*, 392 S.W.3d 165, 174 (Tex. App.—Austin 2010, pet. denied) (remanding plea to jurisdiction of ultra vires claims for amendment of pleadings). Likewise, to the extent that jurisdiction turns on facts, remand is the appropriate remedy where evidence is absent from the record. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000) (acknowledging that if the plaintiff's standing depends on the resolution of fact issues, the plaintiff "should be given an opportunity on remand to have a full evidentiary hearing"); *Dallas County, Tex. v. Logan*, 420 S.W.3d 412, 431 (Tex. App.—Dallas 2014), *reh'g overruled* (Feb. 12, 2014), *review denied* (Oct. 3, 2014) (holding that when jurisdictional issues were not addressed at the trial court level, the plaintiff needs an opportunity to develop the record); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378-80 (Tex. 2009) (remanding claim for development of jurisdictional facts).

In this case, the only matter set for hearing was the temporary injunction. RR.III:128-29. Although the injunction hearing lasted for several days, the only matter that the trial court allowed before it was the injunction. RR.III:128-29. Even after Shavano requested that its plea to the jurisdiction be heard, the trial court

declined, advising that the only thing before it was the temporary injunction. RR.III:128-29. It was not until the last day of the hearing, after the close of evidence, that the trial court agreed to hear Shavano's plea to the jurisdiction. RR.IV:25. Therefore, the record on which Shavano relies was developed for the purpose of the temporary injunction, not for examining the jurisdiction of the trial court. Under these particular circumstances, Ard Mor is entitled to establish the Court's jurisdiction over Shavano in the event that jurisdiction does not appear from the face of the pleadings.

## **CONCLUSION AND PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellees pray that this Court affirm the trial court's denial of Appellant's Plea to the Jurisdiction and First Supplemental Plea to the Jurisdiction. In the alternative, Appellees pray that this Court remand this matter to the trial court to provide Appellees the opportunity to cure any alleged defects in pleadings or develop the facts necessary to the proof of jurisdiction. Appellees request any further relief, in law and equity, to which Appellees may justly be entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG

By: _/s/ Karen L. Landinger_
KAREN L. LANDINGER
State Bar No. 00787873
klandinger@cbylaw.com
JAY K. FARWELL
State Bar No. 00784038
jfarwell@cbylaw.com
10999 West IH-10, Suite 800
San Antonio, Texas  78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)

ATTORNEYS FOR APPELLEES, ARD MOR, INC., TEXAS ARDMOR PROPERTIES, LP AND TEXAS ARDMOR MANAGEMENT, LLC

*Co-Counsel*
David L. Earl
State Bar No. 06343030
dearl@earl-law.com
EARL & ASSOCIATES, P.C.
Pyramid Building
601 NW Loop 410, Suite 390
San Antonio, Texas  78216
(210) 222-1500 (Office)
(210) 222-9100 (Fax)

37

## CERTIFICATE OF SERVICE

I certify that on the 9th day of February, 2015, a true and correct copy of the foregoing BRIEF OF APPELLEES was served on the following counsel of record by electronic service through *MyFileRunner.com*; and the BRIEF OF APPELLEES was duly filed with the Clerk of the Fourth Court of Appeals through *MyFileRunner.com*, together with this proof of service:

Patrick C. Bernal
Elizabeth M. Provencio
DENTON NAVARRO ROCHA BERNAL HYDE & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
(210) 227-3243 (Office)
(210) 225-4481 (Fax)
patrick.bernal@rampage-sa.com
elizabeth.provencio@rampage-sa.com

Lance H. "Luke" Beshara
Randall A. Pulman
Brandon L. Grubbs
PULMAN, CAPPUCCIO, PULLEN,
  BENSON & JONES, LLP
2161 N.W. Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 (Office)
(210) 892-1610 (Fax)
lbeshara@pulmanlaw.com
rpulman@pulmanlaw.com
bgrubbs@pulmanlaw.com


                                    */s/ Karen L. Landinger*
                                    KAREN L. LANDINGER
                                    JAY K. FARWELL

# CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), the undersigned certifies this Brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B).

1.  Exclusive of the exempted portions in Tex. R. App. P. 9.4(i)(2)(B), the Brief contains 8,084 words.

2.  The Brief has been prepared in proportionally spaced typeface using WordPerfect Version X5.

3.  If the Court so requests, the undersigned will provide an electronic version of the Brief and/or a copy of the word or line printout.

4.  The undersigned understands a material misrepresentation in completing this Certificate, or circumvention of the typevolume limits in Tex. R. App. P. 9.4, may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

*/s/ Karen L. Landinger*
KAREN L. LANDINGER
JAY K. FARWELL

39